## SCHOLLE v. HARE, SECRETARY OF STATE OF MICHIGAN, ET AL.

No. 22. Decided April 23, 1962.

*Theodore Sachs* for appellant.

*Paul L. Adams,* Attorney General of Michigan, *Joseph R. Bilitzke,* Solicitor General, *Samuel J. Torina,* former Solicitor General, *Stanton S. Faville,* Chief Assistant Attorney General, *Leon S. Cohan,* Deputy Attorney General, and *G. Douglas Clapperton,* Assistant Attorney General, for James M. Hare, Secretary of State of Michigan, appellee. *Edmund E. Shepherd* entered an appearance for Frank D. Beadle et al., appellees.

*Melvin Nord* and *Harold Norris* filed a brief, as *amici curiae,* in support of appellant.

PER CURIAM.

The judgment is vacated and the case is remanded to the Supreme Court of Michigan for further consideration in the light of *Baker* v. *Carr,* 369 U. S. 186.

MR. JUSTICE FRANKFURTER took no part in the consideration or decision of this case.

MR. JUSTICE CLARK and MR. JUSTICE STEWART, concurring.

If we were able to read the several opinions in the Michigan Supreme Court the way our Brother HARLAN does, we would find much to persuade us that this case should not be remanded. But the state court opinions are not that clear to us. A careful reading of the opinions leaves us with the fixed impression that all but three members of the Michigan court were convinced that, whatever the underlying merits of the appellant's Equal Protection claim, it was, in the words of one of the justices, "not enforcible in the courts." 360 Mich. 1, 112, 104 N. W. 2d 63, 121. In *Baker* v. *Carr* we held that such a claim *is* judicially cognizable. Accordingly, we join in the Court's order remanding this case to the Supreme Court of Michigan.

The present order of course reflects no views on the merits of the appellant's Equal Protection claim. It may well turn out that the assertion of invidious discrimination is not borne out by the record. Today's order simply reflects our belief that the Michigan Supreme Court should be the first to consider the merits of the federal constitutional claim, free from any doubts as to its justiciability.

MR. JUSTICE HARLAN, dissenting.

The Court remands this case to the Supreme Court of Michigan "for further consideration in the light of *Baker* v. *Carr*, 369 U. S. 186." In my opinion nothing decided or said by the majority in *Baker* casts any light upon, still less controls, the only issue actually adjudicated by the Michigan Supreme Court in the present case. I think that either this appeal should be dismissed for want of a substantial federal question or probable jurisdiction should be noted and the case set for argument.

The sole and dispositive question decided by the Michigan Supreme Court was concisely put by Justice Edwards, speaking for four members of that eight-man court:

> "Does the Fourteenth Amendment to the United States Constitution prohibit any State from enacting provisions for electoral districts for 1 house of its legislature [the State Senate] which result in substantial inequality of popular representation in that house?" *Scholle* v. *Secretary of State,* 360 Mich. 1, at 85, 104 N. W. 2d 63, at 107.

These four members of the state court concluded that nothing in the Fourteenth Amendment or in the decisions of this Court construing the Equal Protection Clause "prohibits a State from establishing senate electoral districts by geographic areas drawn generally along county lines which result in substantial inequality of voter representation favoring thinly populated areas as opposed to populous ones." 360 Mich., at 91, 104 N. W. 2d, at 110. Accordingly, the original petition for mandamus filed in the Supreme Court of Michigan was dismissed.[1] The

---

[1] On appeals to the Supreme Court of Michigan the result of an equally divided court is that the judgment below is affirmed. Mich. Stat. Ann. § 27.46 (1938). Although no statute expressly controls, it appears that Michigan follows the general rule that no affirmative action may be taken on an original petition unless a majority of the justices considering the case vote to grant relief. Consequently the effect of an equal division on an original petition for a writ of mandamus would be a dismissal of the petition. Cf. *In re Hartley,* 317 Mich. 441, 27 N. W. 2d 48.

It appears, moreover, that in fact five members (a majority) of the Michigan Supreme Court concurred as to this issue. The separate concurring opinion of Justice Black of that court shows that he also concluded "that a State may—unfettered juridically by the Fourteenth Amendment—determine what as a matter of State policy shall be 'a proper diffusion of political initiative' as between the thinly and heavily populated areas of the State." 360 Mich., at 119–120, 104 N. W. 2d, at 125.

opinion of the four judges did not so much as mention questions pertaining to the "jurisdiction" of the court, the "standing" of the appellant, or the "justiciability" of his claim.

Appellant filed a timely notice of appeal to this Court, and on docketing the record submitted a jurisdictional statement which set forth the questions presented for review.[2]   These papers, along with the motion to dismiss

[2] The appellant listed the following as the "Questions Presented":

"I. Does the Fourteenth Amendment to the U. S. Constitution prohibit the establishment by a state of permanent state legislative districts grossly unequal in population?

"II. Does the Fourteenth Amendment to the U. S. Constitution prohibit the establishment by a state of permanent legislative districts lacking any discernible, rational, uniform, non-arbitrary and non-discriminatory basis of representation whatever (save, only, the freezing by such enactment of legislative malapportionment theretofore invalid under prior constitutional provisions)?

"III. Does a suit duly brought in a state court of otherwise competent jurisdiction, challenging a state constitutional amendment respecting legislative apportionment and/or districting on grounds of asserted conflict with the Fourteenth Amendment to the United States Constitution, present a justiciable controversy of which such court has jurisdiction and the power to render relief?

"IV. Do the 1952 amendments to Art. V, § 2 and § 4 of the Michigan Constitution, and the implementing legislation thereto, offend the Fourteenth Amendment to the U. S. Constitution, including the due-process and equal protection clauses thereof?

"V. If so, may the Michigan Supreme Court, otherwise possessed of jurisdiction, entertain and render relief in an action to invalidate such enactments?"

The third of these questions does assert the issue of "justiciability." However, no reference to "justiciability" appears in the opinion written for four justices of the state court, and the appellees' motion to dismiss or affirm combined, entirely justifiably in face of the record, the appellant's five questions into the following single question:

"Does Article V, Section 2 of the Michigan Constitution, as amended by a majority vote in the general election of November 1952, of the people of the State of Michigan, which prescribes that

or affirm, taken in light of the prevailing opinion in the Michigan Supreme Court, leave no room for doubt but that the precise and single issue in this case is the one presented as Question IV in the jurisdictional statement: "Do the 1952 amendments to Art. V, § 2 and § 4 of the Michigan Constitution, and the implementing legislation thereto, offend the Fourteenth Amendment to the U. S. Constitution, including the due-process and equal protection clauses thereof?" That issue is the more precisely delineated by three circumstances: (1) the legislative branch with which this case is concerned is the State Senate (not the entire State Legislature, as in *Baker* v. *Carr*); (2) the challenged electoral apportionment reflects the desires of Michigan's citizenry, as expressed in a 1952 popular referendum (and is not, as in *Baker* v. *Carr,* the product of legislative inaction); [3] and (3) the present apportionment is prescribed by the Michigan Constitution (and is not in conflict with the State Constitution, as in *Baker* v. *Carr*).

Were there anything in this Court's recent decision in *Baker* v. *Carr* intimating that the constitutional question in this case ought to have been decided differently than it was by the Michigan Supreme Court, I would be content, for reasons given in my dissent in *Baker* (369 U. S. 186, 330), simply to note my dissent to the Court's failure to dismiss this appeal for want of a substantial

the Michigan Senate shall consist of 34 members, each of whom is to be elected from a geographically described area, not subject to change because of fluctuations in population, violate the equal protection or due process clause of the Fourteenth Amendment to the United States Constitution?"

[3] The disputed provision of the Michigan Constitution, Art. V, § 2, which establishes permanent state senatorial districts not subject to change because of fluctuations in population, was adopted as initiative Proposition No. 3 in a referendum held throughout the State in November 1952.

federal question. But both the majority opinion in the *Baker* case and a separate concurrence written to dispel any "distressingly inaccurate impression of what the Court decides," 369 U. S., at 265, were at pains to warn that nothing more was decided than "(a) that the [federal district] court possessed jurisdiction of the subject matter; (b) that a justiciable cause of action is stated upon which appellants would be entitled to appropriate relief; and (c) . . . that the appellants have standing to challenge the Tennessee apportionment statutes." 369 U. S., at 197–198, 265. How any of the extensive discussion on these three subjects in the *Baker* majority opinion can be thought to shed light on the discrete federal constitutional question on which the present case turns—a question which was indeed studiously avoided in the majority opinion in *Baker*—is difficult to understand.

Moreover, the remand cannot be justified on the theory that *Baker* v. *Carr* for the first time suggests—albeit *sub silentio*—that an arbitrary or capricious state legislative apportionment may violate the Equal Protection Clause. For the Michigan Supreme Court assumed precisely that proposition and nonetheless said of the existing apportionment: "In the face of . . . history and . . . precedent, we find no way by which we can say that the classification we are concerned with herein is 'wholly arbitrary,' and hence repugnant to the Fourteenth Amendment of the United States Constitution as the United States supreme court has construed it to this date." 360 Mich., at 106, 104 N. W. 2d, at 118.

With all respect, I consider that in thus remanding this case the Court has been less than forthright with the Michigan Supreme Court. That court is left in the uncomfortable position where it will have to choose between adhering to its present decision—in my view a faithful reflection of this Court's past cases—or treating the remand as an oblique invitation from this Court to

hold that the Equal Protection Clause prohibits a State from constitutionally freezing the seats in its Senate, with the effect of maintaining numerical voting inequalities, even though that course reflects the expressed will of the people of the State.    (Note 3, *supra.*)

In my view the matter should not be left in this equivocal posture.    Both the orderly solution of this particular case, and the wider ramifications that are bound to follow in the wake of *Baker* v. *Carr,* demand that the Court come to grips now with the basic issue tendered by this case.    This should be done either by dismissing the appeal for want of a substantial federal question or by noting probable jurisdiction and then deciding the issue one way or another.    For reasons given in my separate dissent in the *Baker* case, I think dismissal is the right course.