STATE of North Dakota ex rel. John D. PAULSON, Herschel Lashkowitz, Clarence D. Johnson, R. R. Smith, and Carl Albers, Petitioners,

v.

Ben MEIER, Secretary of State for the State of North Dakota, Respondent.

No. 8155.

Supreme Court of North Dakota.

April 18, 1964.

Addendum April 23, 1964.

Conmy, Conmy & Feste, Fargo, for petitioners.

Helgi Johanneson, Atty. Gen., and Paul M. Sand, First Asst. Atty. Gen., Bismarck, for respondent.

TEIGEN, Judge.

The petitioners herein presented to this court a petition setting forth that they are citizens of the United States and of the State of North Dakota, and, as registered voters, are entitled to vote for members of the Legislature of the State of North Dakota in four senatorial districts. The petition challenges Sections 26, 29 and 35 of Article II, Section 214 of Article XVIII of the Constitution of the State of North Dakota, Section 54–03–01 of the North Dakota Century Code as it existed prior to and after the 1963 amendment, and all earlier districting and reapportionment laws of the State of North Dakota as being violative of the due process and equal protection clauses of the 14th Amendment to the United States Constitution.

The petitioners ask this court to take original jurisdiction and restrain the Secretary of State from doing any act necessary to the holding of elections for members of the House of Representatives or Senate of the North Dakota State Legislature under any of the aforementioned sections of the Constitution and the North Dakota Century Code. The petition also prays that this

court find and declare that the former sections, Sections 26, 29 and 35 of Article II of the Constitution of the State of North Dakota, as they existed prior to the 1960 amendments, are now part and parcel of the Constitution; that this court make its decree fixing the number of Senators which shall constitute the Senate of North Dakota, dividing the State into as many senatorial or legislative districts as there are Senators and fixing the number of Representatives which shall constitute the House of Representatives, the number of members thereof to be elected from the several senatorial districts, or in the alternative to hold that this court will do so, unless the Legislature is convened in special session within a time to be limited and redistricts and apportions under old Sections 26, 29 and 35.

▉ This controversy is clearly one affecting the sovereignty of the State and the franchises, prerogatives and liberties of the people. It is clearly within the jurisdiction of this court as prescribed by Section 87 of our Constitution.

It appears, however, the petitioners found themselves in a dilemma. They first invoked the jurisdiction of the three-judge United States District Court. That court invoked the doctrine of abstention on the ground that this court be given an opportunity to pass on all the constitutional issues involved and stayed proceedings and retained jurisdiction. Petitioners state in their petition to this court:

"That this petition has been filed in this court by direction of the United States District Court for the District of North Dakota, and your petitioners are exposing their Federal claims in this court only for the purpose of complying with the direction of the United States Court so that the statutory and constitutional provisions of the State of North Dakota may be construed in light of these Federal claims."

The per curiam order of abstention of the three-judge United States District Court

for the District of North Dakota, Southwestern Division, omitting its formal parts, reads as follows:

"PER CURIAM

"We said in Civil 424, [Lein v. Sathre] 201 F.Supp. 535, 542:

" 'It cannot be said, therefore, that the issues presented here, or any of the basic questions which are related to the question of the validity of the apportionment plan have ever been presented to or considered by the Supreme Court of North Dakota. We believe that Court should have the opportunity of passing on all questions herein before further proceedings are had in this Court.'

"Moreover, in our order of July 22, 1963, we said:

" 'It is apparent to us that where, as here, Plaintiffs have ample time and opportunity to litigate a cause such as this in the Supreme Court of North Dakota, we are following the teachings of Scholle v. Hare, 369 U.S. 429 [82 S.Ct. 910, 8 L.Ed.2d 1]. In that case the Supreme Court of the United States remanded to the Supreme Court of Michigan a similar question so that Court could be "the first to consider the merits of the federal constitutional claim free from any doubt of its justiciability."

" 'Moreover, Scholle, decided after Baker v. Carr, 369 U.S. 186 [82 S.Ct. 691, 7 L.Ed.2d 663] clearly indicates that such questions as Plaintiffs now seek to raise here are not only appropriate for consideration by a state court, *but that state courts have an obligation to enforce and protect the rights created by the Constitution of the United States.'* (Emphasis added.)

"This Court will retain jurisdiction of the action, but all proceedings are ordered stayed until the Supreme Court

of North Dakota has an opportunity to pass upon all of the constitutional issues involved in the instant case.

"Dated at Bismarck, North Dakota, this 30th day of March, 1964."

Thereafter, the United States District Court was petitioned for a modification of their per curiam order to provide the primacy of the United States District Court to decide that questions of Federal law be retained and cited in support thereof England et al. v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440. The United States District Court denied the petition for modification on April 1, 1964.

Petitioners thereupon brought the instant proceeding in this court, stating it was "by direction of the United States District Court" and that they "are exposing their Federal claims in this court only for the purpose of complying with the direction of the United States Court so that the statutory and constitutional provisions of the State of North Dakota may be construed in the light of these Federal claims."

It is clear the petitioners desire to restrict these proceedings in such a manner as to preserve their right to return to the United States District Court to litigate the Federal questions.

In its original order invoking the doctrine of abstention, the United States District Court cited Scholle v. Hare, 369 U.S. 429, 82 S.Ct. 910, 8 L.Ed.2d 1, as its authority for invoking the doctrine. Scholle v. Hare, however, was a per curiam opinion of the United States Supreme Court on an appeal from the Supreme Court of the State of Michigan. That case originated in the State courts. Furthermore, the United States Supreme Court did not retain jurisdiction but remanded the case to the Supreme Court of Michigan for further consideration in the light of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. Scholle v. Hare, supra, is not applicable. In this instance the proceeding was initiated in the Federal court. It invoked sua sponte, the doctrine of abstention retaining jurisdiction of the action, but stayed all proceedings until the Supreme Court of North Dakota has an opportunity to pass upon *all* of the constitutional issues involved. This is an attempt on the part of the United States District Court to compel the petitioners against their wishes to litigate the Federal question in the State courts. The United States Supreme Court in England v. Louisiana State Board of Medical Examiners, supra, said:

"There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims. Such a result would be at war with the unqualified terms in which Congress, pursuant to constitutional authorization, has conferred specific heads of jurisdiction upon the federal courts, and with the principle that 'When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction * * *. The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.' Willcox v. Consolidated Gas Co., 212 U.S. 19, 40, 29 S.Ct. 192–195, 53 L.Ed. 382. Nor does anything in the abstention doctrine require or support such a result. Abstention is a judge-fashioned vehicle for according appropriate deference to the 'respective competence of the state and federal court systems.' Louisiana P. & L. Co. v. Thibodaux, 360 U.S. 25, 29, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058. Its recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law. Accordingly, we have on several occasions explicit-

ly recognized that abstention 'does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise.' Harrison v. NAACP, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152; accord, Louisiana P. & L. Co. v. Thibodaux, supra, 360 U.S., at 29, 79 S.Ct. at 1073, 3 L.Ed.2d 1058."

 The doctrine of abstention contemplates:

"* * * that controversies involving unsettled questions of state law [may] be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions." City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562.

"* * * that decision of the federal question be deferred until the potentially controlling state-law issue is authoritatively put to rest." United Gas Pipe Line Co. v. Ideal Cement Co., 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623.

"* * * that federal courts do not decide questions of constitutionality on the basis of preliminary guesses regarding local law." Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101.

"* * * that these enactments should be exposed to state construction or limiting interpretation before the federal courts are asked to decide upon their constitutionality, * * *." Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152.

The Supreme Court in N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405, and Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072, said that after a post-abstention determination and rejection of a litigant's Federal claims by the State courts, he could ·seek direct review in the

Supreme Court of the United States but in England et al. v. Louisiana Medical Board, supra, the court said such review, even when available by appeal directly to the United States Supreme Court, rather than only by discretionary writ of certiorari, is an inadequate substitute for the initial United States District Court determination to which the litigant is entitled in the Federal courts. It was held in N. A. A. C. P. v. Button, supra, that a litigant may elect to forego that right when the choice is voluntarily made. However, in the England et al. v. Louisiana Medical Board case, supra, the petitioner attempted to return to the district court which granted a motion dismissing Federal action on the ground that the State courts of Louisiana had passed on all issues raised. The court in that case said:

"The line drawn should be bright and· clear, so that litigants shunted from federal to state courts by application of the abstention doctrine will not be exposed, not only to unusual expense and delay, but also to procedural traps operating to deprive them of their right to a District Court determination of their federal claims. * * * But we see no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in the District Court."

For these reasons the court held:

"We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forego his right to return to the District Court."

The United States Supreme Court then clarifies its decision in Government & Civic

Employees v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894, and states:

"The case does not mean that a party must litigate his federal claims in the state courts, but only that he must inform those courts what his federal claims are, so that the state statute may be construed 'in light of' those claims.

\* \* \* \* \* \*

"That is, he may inform the state courts that he is exposing his federal claims there only for the purpose of complying with Windsor, and that he intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions. Such an explicit reservation is not indispensable; the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily did more than Windsor required and fully litigated his federal claims in the state courts. When the reservation has been made, however, his right to return will in all events be preserved."

It is clear the petitioners in the instant case have made the reservation to protect their right to return to the United States District Court. They do not voluntarily expose the Federal question in this proceeding.

 It has been made exceedingly clear from the cases discussed that although a party may litigate a Federal question involving a State law in State court, he also is entitled, as a matter of right, to have these questions initially litigated in the Federal courts if he so elects. These petitioners, having elected to have the Federal court decide the Federal question, reserved that right when they were compelled to come to this court. Therefore, we should not assume jurisdiction of the Federal question as it may jeopardize their rights to have the Federal question litigated in the court of their choice.

 Under such circumstances the Federal court will have exclusive jurisdiction of the subject matter of the cause of action insofar as the Federal question is concerned. We employ the doctrine of comity—the court that first acquires jurisdiction of the question retains it, which, in this case, is the United States District Court. 21 C.J.S. Courts § 529.

The petitioners have raised two State questions which we will now consider. Both of these questions deal with the apportionment statute passed by the 1963 Legislature. It is designated as Chapter 345 of the Session Laws of 1963, and Section 54–03–01 of the 1963 Pocket Part Supplement to the North Dakota Century Code.

The petitioners allege this statute is unconstitutional under the State Constitution. They allege it violates Sections 11, 13 and 20 of the State Constitution and also that it violates Section 29, as amended on June 26, 1960.

Sections 26, 29 and 35 of the Constitution were amended in 1960. These amended sections, together with Section 32, must be read together to determine the constitutional approach to the question of districting and apportioning of the Senate and House of Representatives of North Dakota. These sections are self-executing in part. They are as follows:

"Section 26. The senate shall be composed of forty-nine members."

"Section 29. Each existing senatorial district as provided by law at the effective date of this amendment shall permanently constitute a senatorial district. Each senatorial district shall be represented by one senator and no more."

"Section 32. The house of representatives shall be composed of not less than sixty, nor more than one hundred forty members."

"Section 35. Each senatorial district shall be represented in the House of Representatives by at least one rep-

resentative except that any senatorial district comprised of more than one county shall be represented in the House of Representatives by at least as many representatives as there are counties in such senatorial district. In addition the Legislative Assembly shall, at the first regular session after each federal decennial census, proceed to apportion the balance of the members of the House of Representatives to be elected from the several senatorial districts, within the limits prescribed by this Constitution, according to the population of the several senatorial districts. If any Legislative Assembly whose duty it is to make an apportionment shall fail to make the same as herein provided it shall be the duty of the chief justice of the supreme court, attorney general, secretary of state, and the majority and minority leaders of the House of Representatives within ninety days after the adjournment of the legislature to make such apportionment and when so made a proclamation shall be issued by the chief justice announcing such apportionment which shall have the same force and effect as though made by the Legislative Assembly."

■ These sections are self-executing insofar as they establish that the Senate shall consist of 49 members, one from each of 49 senatorial districts, and that each senatorial district shall be represented in the House of Representatives by at least one representative, except in multi-county senatorial districts which shall be represented by at least as many representatives as there are counties in the district. The Legislature has no power to enact legislation in conflict with any of these provisions. Section 29 froze the senatorial districts as established by Chapter 7 of the Session Laws of 1931, which was in effect as Section 54–03–01, N.D.C.C., when the amendment was approved by the people. The senatorial districts frozen by Section 29 also constitute the districts from which representatives shall be elected, except as to the multi-county senatorial districts. In those dis-

tricts Section 35 provides there shall be as many representatives as there are counties in the district. This provision adds twelve more representatives, making a total of 61 members that are permanently provided for by the Constitution under an apportionment which is beyond the power of the Legislature to change. State ex rel. Lein v. Sathre, N.D., 113 N.W.2d 679.

The second sentence of Section 35 imposes upon the Legislative Assembly the duty to "proceed to apportion the balance of the members of the House of Representatives to be elected from the several senatorial districts, within the limits prescribed by this Constitution, according to the population of the several senatorial districts." Thus the Legislature was directed to make a supplementary apportionment subject to the overall limitation of House membership of 140 members as provided by Section 32. State ex rel. Lein v. Sathre, supra. We also said in that case:

"We are of the opinion that the duty of the Legislature to apportion is mandatory and continues until it is performed."

The second sentence of Section 35 is, in legal effect, a mandate directed to the Legislature to make Section 35 fully operative within the limitations of Section 32. In other words, the Legislature is directed to apportion in accordance with the provisions of Section 35 no more than 79 additional members. The petitioners make no claim that the Legislature did not fulfill the requirements of the constitutional mandate in accordance with its directions and within its limitations. They do not claim that the Legislature did not apportion "the balance of the members of the House of Representatives to be elected from the several senatorial districts, within the limits prescribed by this Constitution according to the population of the several senatorial districts."

■ Petitioners challenge the legislative apportionment on the ground that it violates other sections of the Constitution which are older than Section 35 as amended. These constitutional provisions named by

the petitioners are: Section 11, which provides all laws of a general nature shall have uniform operation; Section 13, which contains the due process clause; and Section 20, which is the equal protection clause. Because the apportionment statute must be assumed to be constitutional under Section 35 and resulted from a mandate of that section to make it fully operative, we must consider the apportionment statute as a part of Section 35, as amended, for the purpose of determining whether or not it is subject to attack on the basis of other constitutional provisions limiting legislative power.

"An act of the Legislature, authorized by a constitutional amendment, and enacted to make the amendment operative, is not necessarily subject to provisions of the Constitution limiting the legislative power, but is to be interpreted as if part of the constitutional amendment." State ex rel. Sartain v. Harris, 77 Ohio St. 481, 83 N.E. 912.

We adopt this principle in this case. Section 35 is the latest expression of the will of the people and it will prevail over Sections 11, 13 and 20, if there is conflict, and the apportionment statute, under the circumstances, is entitled to the same preference.

■■■ "A constitutional amendment will prevail over previously adopted provisions of the Constitution with which it conflicts and with which it cannot be harmonized." State ex rel. Lein v. Sathre, N.D., 113 N.W.2d 679.

We shall next consider the second claim that the apportionment statute is in violation of Section 29 as amended. The petitioners allege that the boundaries of the Ninth Legislative District changed when the City of Fargo annexed territory which was located in the Tenth Legislative District before the apportionment statute became effective.

The Ninth Legislative District, as described by law, was frozen by Section 29 as:

" * * * the township of Fargo, and the City of Fargo, in the county of Cass, * * *."

The apportionment statute under attack describes the Ninth Legislative District in the same words. It describes it as:

" * * * the township of Fargo, and the city of Fargo, in the county of Cass, * * *."

The title of the apportionment statute reads:

"AN ACT To amend and reenact section 54–03–01 of the North Dakota Century Code, relating to the apportionment of the state house of representatives, and providing that such house shall consist of one hundred and nine members."

The title does not state that the enactment redistricts.

■■■ The apportionment statute contains no express repeal. The statute, as amended, merely changed the number of representatives of some senatorial districts from the number contained in Section 54–03–01, N.D.C.C. As to the other portions of the original section, no change whatever was made. The legal effect of the amendatory Act, in our opinion, was merely to repeal and abrogate the apportionment of the State House of Representatives as contained in the old section and established a new apportionment in accordance with the mandate of Section 35 of the Constitution as amended. The other parts of the law were left intact and, under well-settled rules of statutory construction, they continue in full force and with the same legal effect as though no amendment had been made. The fact that those portions were republished at length, in obedience to the constitutional provision requiring such publication when an amendment of an existing statute is to be effected, is not important in determining whether such portions were repealed and again enacted by the amendatory Act. To the extent that it reenacts the provisions of the former law, it is a mere continuation of those provisions.

"When a particular section of a statute is amended by retaining some of the provisions of the original section with-

out change, and complete in themselves, and omitting other provisions which in no way affect the parts retained, and there is no express repeal of the original section, the provisions of the original section which are retained will not be deemed to have been repealed and reenacted, but to have been continued in force from their first enactment, with such modifications as have been made by subsequent acts; and the omitted portions only will be deemed to be abrogated and repealed by the amendment." City of Fargo v. Ross, 11 N.D. 369, 92 N.W. 449. See also State v. Mayo, 15 N.D. 327, 108 N.W. 36; State for Benefit of Workmen's Comp. Fund v. E. W. Wylie Co., 79 N.D. 471, 58 N.W.2d 76; and Golden Valley County v. Lundin, 52 N.D. 420, 203 N.W. 317.

For the reasons set forth herein, we deny the petition.

MORRIS, C. J., and TEIGEN, STRUTZ, ERICKSTAD and BURKE, JJ., concur.

STRUTZ, Judge (concurring).

I agree with and join in the opinion of the court, but wish to add that, on the face of its order, the Federal District Court asks us to decide the Federal issues raised in this litigation and, at the same time, it reserves jurisdiction to accept or reject our decision in the matter.

If our decision would be no more than advisory in character, we have no power to make it under the provisions of our Constitution. On the other hand, if our decision would be effective as a final judgment of this court, the reservation of jurisdiction by the Federal District Court is entirely meaningless because that court has no appellate jurisdiction over the decisions of this court.

ADDENDUM

TEIGEN, Judge.

 In the original petition, petitioners pray "That the court find and declare that the former Sections 26, 29 and 35 of the Constitution of the State of North Dakota, as they existed prior to amendment in 1960, are now part and parcel of the Constitution of the State of North Dakota." We did not pass on that question in the original decision. The petitioners have now asked us to amplify our decision and determine the question "whether a finding [by the United States courts] that Section 29 was invalid would revive both old Section 29 and also Sections 26 and 35." They argue that, although our decision may be advisory, this is a State question of which this court is the final arbiter; that the situation in this case is different and, therefore, we should pass on the question, otherwise the case may be shuttled back and forth between courts.

The question is an abstract one and will materialize only in the event that the Federal court decides that Section 29 of our Constitution, as amended, violates the Federal Constitution.

As we view the question, this court is asked to deliver an advisory opinion. This we cannot do. Section 96 of our Constitution provides:

"No duties shall be imposed by law upon the supreme court or any of the judges thereof, except such as are judicial, * * *."

In Langer v. State, 69 N.D. 129, 284 N.W. 238, we said:

"The powers conferred upon the Supreme Court by the Constitution of North Dakota are exclusively judicial. The giving of advisory opinions is not a judicial function.

"Under the Constitution of North Dakota, the Supreme Court is not permitted to render advisory opinions." See also State ex rel. Olsness v. McCarthy, 53 N.D. 609, 613, 207 N.W. 436; and State ex rel. Johnson v. Baker, 74 N.D. 244, 248 and 257, 21 N.W.2d 355.

MORRIS, C. J., and TEIGEN, STRUTZ, ERICKSTAD and BURKE, JJ., concur.