# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MARCH SESSION, 1998

FILED

May 14, 1998

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,          )     C.C.A. NO. 01C01-9601-CR-00529
                             )
Appellee,                    )
                             )
                             )     DAVIDSON COUNTY
VS.                          )
                             )     HON. J. RANDALL WYATT, JR.
JAMIL BUTLER,                )     JUDGE
                             )
Appellant.                   )     (Aggravated Robbery)


## ON APPEAL FROM THE JUDGMENT OF THE CRIMINAL COURT OF DAVIDSON COUNTY


FOR THE APPELLANT:

ROBERT J. MENDES
209 Tenth Avenue South
Nashville, TN 37203

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DEBORAH A. TULLIS
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

VICTOR S. JOHNSON
District Attorney General

PAUL DEWITT
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN 37201-1649


OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Jamil Butler, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Davidson County jury of one count of aggravated robbery and sentenced as a standard, Range I offender to twelve years imprisonment. He appeals his conviction, raising the following issues for our review: (1) That the trial court erred in denying the Defendant's motion to suppress the identification of him from a photographic lineup; (2) that the trial court erred in allowing the State's witnesses who viewed the impermissibly suggestive photographic lineup to testify at trial; (3) that the trial court erred in allowing the jury to view surveillance photos from another robbery; (4) that the trial court erred in denying the Defendant's motion to dismiss because the audiotape of the preliminary hearing was lost; (5) that the evidence was insufficient to support a verdict of guilt; and (6) that trial counsel rendered ineffective assistance. We affirm the judgment of the trial court.

On the evening of November 10, 1994, Jason Lee McCawley, Lavell McElrath and Barry Stewart were working the evening shift at the Little Caesar's pizza restaurant on McGavock Pike in Nashville, Tennessee. The restaurant was a take-out facility so that the front counter was six to eight feet from the front doors. There were two benches for persons to wait, and shelving and the preparation area were behind the cash register at the front. The front of the business was well-lit from six fluorescent lights in the ceiling. McCawley's wife was also present in the restaurant, but was near the back and did not observe the incident in question. During the evening, a black male entered the establishment

and walked straight to the front counter. This person was later identified as the Defendant. McCawley was working the register that night. The Defendant approached him, put a dollar bill on the counter, and asked for change for a pay phone that was located across the street. When McCawley opened the register to get the change, the Defendant began reaching for bills with his left hand. McCawley grabbed the Defendant's hand, pushed it aside, and started asking the Defendant what he was doing. The Defendant pulled a gun from his right pocket. McCawley saw the Defendant's face and described him as being in his late twenties, having high cheekbones, rough shaven and with bloodshot eyes. He was wearing a baseball cap and some type of football jacket. McCawley noticed small scars on the Defendant's left hand.

McCawley raised his hands and briefly looked to the left where McElrath was standing taking a phone order at approximately an arm's length distance away. McCawley grabbed McElrath and pushed him toward the back of the store. The Defendant continued to grab the money from the register. He appeared to be slightly hurried, but also appeared calm. McCawley activated a silent alarm when he got to the back of the store. He estimated that he had contact with the Defendant for approximately twenty to thirty seconds.

Lavell McElrath was answering the telephone when the Defendant walked into the restaurant. He was located about three feet from the cash register. McElrath saw the Defendant ask for change, reach in the cash register, then pull a gun when McCawley tried to push his hand away. McElrath also saw the Defendant's face and described him as somewhat rough shaven with a mustache, and that he was wearing a cap and a winter jacket. The Defendant's

eyes were brown and he had bumps around his mustache. He estimated that he saw the Defendant for twenty to thirty seconds. McElrath dropped the telephone and McCawley pushed him to the back. McCawley was yelling "We're getting robbed! We're getting robbed!"

Barry Stewart, the store manager, was at the "make station" assembling a pizza, when the Defendant came in. The make station was located directly behind the telephones. Stewart glanced up when he heard the Defendant come into the store, then returned to his work. He then saw McCawley running toward him, yelling that they were being robbed. Stewart looked at the front and saw the Defendant with a gun, taking money out of the cash register. Stewart described him as six feet tall, wearing a blue baseball cap and dark clothing. His eyes were bloodshot and he had high cheekbones. He estimated that the Defendant was in view for thirty seconds to a minute and that he was fifteen to twenty feet away. Stewart said that nothing blocked his view of the Defendant. Stewart and the Defendant briefly made eye contact. The Defendant then turned and left the restaurant.

On November 11th, Detective Danny Collins went to the Little Caesar's restaurant and showed McElrath and McCawley a series of surveillance photographs. Still photos had been taken from a video camera during a robbery at a Speedway convenience store one day before the Little Caesar's robbery. The suspect in that robbery resembled the person described by the Little Caesar's victims. Collins was showing the photos to McCawley, who stated that he thought they looked like the Little Caesar's robber. As McCawley was looking,

-4-

McElrath walked up behind McCawley, looked over his shoulder and said that the photo looked like the Little Caesar's robber.

McCawley saw the Defendant approximately two weeks after the robbery walking on Riverside Drive, which is three blocks from Little Caesar's. Approximately five days later, McElrath was leaving for work and saw the Defendant walking through some bushes two houses down from his home. He estimated that the Defendant was thirty to forty feet away. McElrath stepped into his yard to get a better view. He told his mother, who reported it to the police. Stewart also saw the Defendant walking down the street in the area near the store within a week after the robbery. Stewart called the police to report what he saw.

The Defendant was eventually located and arrested. On November 29, 1994, Detective Collins went to Little Caesar's and showed McElrath and Stewart a photo lineup. It consisted of photographs of six subjects, including that of the Defendant. McElrath looked at the lineup first and identified the Defendant. Stewart then viewed the photos and identified the Defendant. McElrath and Stewart were kept apart and viewed the lineup independently. Detective Collins returned to Little Caesar's on December 1, 1994, and showed McCawley the photo lineup. McCawley also identified the Defendant.

The Defendant was indicted on one count of aggravated robbery. After a jury trial, he was found guilty on December 12, 1995, and the trial court sentenced him to twelve years as a standard, Range I offender. He now appeals his conviction.

The Defendant argues that the trial court erred in denying his motion to suppress the in court identification of him by witnesses because their testimony was based on a photographic lineup. On a motion to suppress, deference is given to the trial court to assess the credibility of the witnesses and determine issues of fact and the prevailing party is entitled to the strongest legitimate view of the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The findings of fact of the trial court at a suppression hearing will not be disturbed on appeal unless the evidence in the record preponderates otherwise. Id.

"Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photo identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). A pretrial confrontation procedure may be unlawful if it is unnecessarily suggestive and conducive to irreparable mistaken identification under the totality of the circumstances. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); Moore v. Illinois, 434 U.S. 220, 227, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977).

Although it may be suggestive, an identification may satisfy due process as reliable and admissible when considering the totality of the circumstances. See State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). Five factors are to be considered when evaluating the propriety of the identification process. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972);

Bennett v. State, 530 S.W.2d 511, 514 (Tenn.), reh'g. denied (Tenn. 1975). These are the opportunity the witness had to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witnesses' prior description of the criminal, the level of certainty of the witness at the confrontation and the time between the crime and the confrontation. Brown, 795 S.W.2d at 694.

The Defendant contends that the photo lineup was tainted by two witnesses' prior viewing of the Speedway surveillance photos. He claims that the surveillance photos looked like him and when the witnesses viewed the photo array several weeks later, the earlier photo suggested that the Defendant was the robber. The trial court conducted a full suppression hearing regarding the photo lineup on December 1st and 4th, 1995. The trial judge first concluded that the witness Barry Stewart would be permitted to testify regarding his identification of the Defendant in the photo lineup. The trial judge found that Stewart had never viewed the Speedway photos and was exposed to no potentially suggestive influences. The Defendant had argued that Stewart and McElrath viewed the photo array together, however, Detective Collins and both witnesses testified that they were not together nor did they discuss the photos. The trial court obviously resolved this issue in favor of the State. We cannot conclude that the evidence preponderates against the trial court's findings regarding this witness. Thus, having concluded that no suggestive procedure occurred for Stewart, no application of the Biggers factors was indicated.

The trial court then evaluated the suggestiveness of the Speedway surveillance photos on the identification of the Defendant in the photo lineup as

was made by McCawley and McElrath. The trial court noted that McCawley testified that although he thought the Speedway photos looked like the robber, he based his identification of the Defendant on his face-to-face contact with him at the Little Caesar's robbery. The trial court also considered that the Speedway photos were viewed several weeks before the photo lineup was produced. The trial court also noted that McElrath testified that he viewed the Speedway photos and thought they looked like the perpetrator of the Little Caesar's robbery. However, he stated that he saw the Defendant walking in his neighborhood shortly after the robbery. McElrath also based his identification of the Defendant in the lineup on his personal encounters with him.

Finally, the trial court stated that the Speedway surveillance photos were unclear, taken from a distance, and revealed merely a similar figure wearing a baseball cap. The trial judge found the photos would be difficult to use to identify a suspect. Moreover, the trial court noted that the Defendant never acknowledged that he was the person in the Speedway photos and that there was no real issue of the identification of him. The trial court concluded that the Speedway photos were not the basis for the later identification of the Defendant. Furthermore, even if considering that the photos were suggestive, the trial court found that under Biggers, the witnesses had the opportunity to view the Defendant during the crime, their attention was focused on him, there was very little doubt about the witnesses' certainty, and the identification was close in time to the robbery.

We have reviewed the testimony at the suppression hearing, the arguments of counsel and the findings of the trial court. From the record before us, we cannot conclude that the evidence preponderates against the trial court's

findings. Therefore, we conclude that the trial court properly denied the Defendant's motion to suppress the witnesses' identification testimony. This issue is without merit.

## II.

The Defendant next asserts that the trial court erred by denying his motion to exclude witness testimony from those who viewed the Speedway photos, thus denying him a fair trial. He contends that Rule 403 of the Tennessee Rules of Evidence applies and that the testimony should have been excluded because "its probative value [was] substantially outweighed by the danger of unfair prejudice." He also asserts that he was deprived of his right to confront the witnesses against him fully as provided by the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Tennessee Constitution. The confrontation clause of the Sixth Amendment provides two types of protection for criminal defendants: the right to physically face those who testify against him, and the right to cross-examine witnesses. Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40, 53 (1987); State v. Middlebrooks, 840 S.W.2d 317, 332 (Tenn. 1992).

The Defendant contends that in order to cross-examine the witnesses fully, he would be required to explore the effect of the Speedway photos, putting him at risk of great prejudice. He argues that the only proper remedy would have been to exclude any testimony from McElrath and McCawley. The trial court had already determined in its denial of the Defendant's motion to suppress the identification testimony, that the Speedway surveillance photos had no salient

effect on the witnesses identification of him in the photo lineup. Defense counsel conducted a full cross-examination of the witnesses regarding their identification of the Defendant. In these circumstances, given the minimal influence of the photos on the witnesses' identification of the Defendant, failure to raise the Speedway issue would not have necessarily prevented an effective cross-examination implicating constitutional concerns. It was a tactical decision on the part of the defense to choose to raise the Speedway issue at trial as a means to impeach the State's witnesses. Therefore, we cannot conclude that the trial court erred in denying the Defendant's motion to prevent the witnesses from testifying at trial.

## III.

Next, the Defendant contends that the trial court erred by denying his oral motion to prevent the jury from viewing the Speedway photos. Evidence must be relevant and probative to some issue at trial; the evidence must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Additionally, Rule 403 provides that even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403; see State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996). Whether to admit evidence is within the discretion of the trial court and will not be reversed absent a clear showing of an abuse of that

discretion.  State v. DuBose, 953 S.W.2d 649, 654 (Tenn. 1997); McCary, 922

S.W.2d at 515.


Here, the trial judge prohibited the State from introducing the Speedway

photos or examining witnesses regarding the photos in its case in chief.  The

Defendant requested that he be allowed to cross-examine the State's witnesses

regarding the Speedway photos without showing the photos to the jury.  The trial

court ruled that if the Defendant chose to cross-examine the witnesses regarding

the photos, the jury would be entitled to view the photos and that the trial court

would issue a curative instruction.  The Defendant chose to cross-examine the

witnesses regarding their identification of him and the possible influence from

viewing the Speedway photos.  The trial judge issued the following instruction to

the jury:


> You are further instructed that the black and white photographs which were
> admitted as Exhibit 2, were not intended to indicate to you criminal activity
> on the part of anyone, and more particularly, were not intended to indicate
> the defendant being involved in any criminal activity.  They were only
> offered as what influence they had, if any, on the later identification made
> by the witnesses in this case.


The Defendant argues that it was necessary to cross-examine the State's

witnesses regarding the photos to insure him a fair trial. Defense counsel

conducted an extensive cross-examination of the witnesses about their

identification of him.  Once the Defendant raised the Speedway photos issue with

the witnesses, the photos became relevant to the issue of the potential influence

they had upon the witnesses' identification of him. The Defendant argues that the

photos were highly prejudicial because they were too fuzzy for a positive

identification, yet they were associated with him.  However, in order to constitute

error, we must conclude that the photos' probative value was substantially outweighed by the danger of unfair prejudice. This we cannot do. The photos, by their ambiguity regarding the identity of the person in them, although relevant, were not highly significant in terms of impeaching the witnesses' identification of the Defendant. As a result, although associating the Defendant with another possible crime is clearly prejudicial, we do not find that any prejudicial effect of the Speedway photos in this case substantially outweighed their probative value. Moreover, the trial court instructed the jury that the photos were not to be associated with the commission of any crime. It is the duty of trial courts to give limiting jury instructions when evidence is being admitted for only a limited purpose. State v. Dutton, 896 S.W.2d 114, 116 (Tenn. 1995). It is also a well-established rule in Tennessee that a jury is presumed to have followed the instructions of the trial court. State v. Lawson, 695 S.W.2d 202, 204 (Tenn. 1985). The trial court's instruction also helped to neutralize the potential prejudicial effect of the photos. Therefore, we conclude that the trial judge did not abuse his discretion in introducing the photos once the Defendant raised the Speedway issue. This issue has no merit.

IV.

The Defendant contends that the trial court erred by failing to dismiss the indictment because the audio taped transcript of the preliminary hearing had been lost. The Defendant alleges that McCawley's testimony at the preliminary hearing was inconsistent from that at trial, specifically on the issue of the amount of money taken and the identification of the Defendant. The Defendant contends

that he was unable to confront the witnesses against him fully and that this was prejudicial to his case.

Rule 5.1(a) of the Tennessee Rules of Criminal Procedure requires that preliminary hearing proceedings "shall be preserved by electronic recording or its equivalent and when the defendant is subsequently indicted such recording shall be made available for listening to by the defendant or defendant's counsel to the end that they may be apprised of the evidence introduced upon the preliminary examination." However, when the evidence contained in the record is so compelling on the question of the defendant's guilt, the lack of a recording of the preliminary hearing may be considered harmless error if it would not have significantly aided the defense. State v. Bohanan, 745 S.W.2d 892, 896 (Tenn. Crim. App. 1987); State v. Butts, 640 S.W.2d 37, 38 (Tenn. Crim. App. 1982).

In the case at bar, in lieu of the preliminary hearing tape, the trial court afforded the Defendant's attorneys an opportunity for an expanded suppression hearing to cross-examine the State's witnesses fully regarding their identification of the Defendant. Additionally, defense counsel interviewed all of the eyewitnesses prior to trial. The Defendant has failed to demonstrate how he might have been prejudiced by the loss of the preliminary hearing audiotape. He alleges that the testimony regarding one witness' identification of him was inconsistent, but did not provide specifics. He also alleges that the witness' testimony regarding the amount of money taken was different, yet, an inconsistency in that regard is not material to proving the elements of aggravated robbery. In a strong case against him, all three eyewitnesses identified the Defendant as the robber with certainty. Therefore, we must conclude that the

-13-

loss or misplacement of the audio recording in this instance constituted harmless error.

V.

The Defendant next argues that the evidence was insufficient to support the guilty verdict. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Aggravated robbery as it applies to the Defendant in this case is robbery as defined in Tennessee Code Annotated section 39-13-401: "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." The act must also be " [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402.

In the case *sub judice*, the Defendant walked into a Little Caesar's pizza place and asked for change for a dollar as a pretext to get the cash register open. When opened, the Defendant started grabbing money from the register. When an employee attempted to stop him, the Defendant pulled out a handgun and continued. The employees ran to the back of the store and activated an alarm.

All three employees in the store at that time, McCawley, McElrath and Stewart, positively identified the Defendant from a photo array. Moreover, all three saw the Defendant in the vicinity of the restaurant after the crime was committed. Two of them even called the police to report that they saw the Defendant. After reviewing the record, we can only conclude that the evidence was overwhelming to prove that the Defendant committed the offense. The positive identification by the victims in this case points unerringly to the Defendant as the assailant and was sufficient to enable any reasonable trier of fact to find guilt beyond a reasonable doubt.

VI.

Finally, the Defendant contends that trial counsel rendered ineffective assistance for his defense. In determining whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687, reh'g denied, 467 U.S. 1267 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper 849 S.W.2d at 746.

The Defendant alleged ineffective assistance of counsel in his motion for new trial, for which a hearing was conducted on July 26, 1996. David Baker and Steve Young represented the Defendant at trial. In this appeal, the Defendant contends that counsel was ineffective for several reasons. He claims that no investigation was conducted between the preliminary hearing and the indictment. He states that counsel failed to interview witnesses until two weeks before the trial. He also argues that counsel's performance was lacking because of the loss of the preliminary hearing tapes and because of the numerous inconsistencies in the witnesses' testimony at trial.

The Defendant testified at the hearing that the preliminary hearing tapes were lost and that he was concerned about identification issues and the amount of money alleged to have been taken. The Defendant stated that McCawley's testimony was inconsistent, but did not elaborate on the specifics. The Defendant testified that when he asked Mr. Baker, he said that the tape was lost and that they could not find it. After the Defendant was bound over to the grand jury, he learned that counsel who represented him in the preliminary hearing had withdrawn and that Mr. Baker was appointed. The Defendant was concerned about his belongings and wanted counsel to contact Reggie Brown. Counsel told him that this was unrelated to the crime and that he needed to handle this himself. He stated that counsel never helped him gain access to a telephone.

The Defendant stated that counsel wanted him to take a plea bargain and that they disagreed on that point. He did not feel counsel was properly investigating the case regarding the witnesses. The Defendant felt that counsel did not effectively cross-examine the witnesses on the identification issue. He

also complained that an exhibit was placed between him and the jury, which obscured their view of him. The Defendant testified that he would have had different counsel or taken a plea if he had known that counsel was going to perform the way they had at trial. The Defendant also complained that counsel told him to appear calm at trial and that this made him appear to have a demeanor like that of the Little Caesar's robber. He complained that the suit provided by counsel was too small and that his shoes had a hole in them.

David Baker also testified at the hearing. He admitted that the preliminary hearing tape had been lost by the court clerk's office and that he made numerous attempts to find it. He did have previous counsel's notes regarding the hearing. Counsel also filed for discovery and he had reviewed the State's file. Counsel first interviewed the witnesses in November, 1996, before the trial in December. He stated that they had attempted to contact the witnesses all along but their investigator, Tim Dickerson, was unable to reach them. Counsel made a number of attempts to settle the case before trial and the Defendant had requested him to pursue a plea agreement. There was an attempt to get a split-confinement sentence with a reduced charge of simple robbery. Negotiations failed and the case was set for trial, however, settlement discussions continued. The Defendant "fired" counsel several times before trial and he became angry when counsel would inform him about aspects of the case. Counsel felt that the Defendant wanted him to focus on trivial matters that would backfire at trial. The Defendant "fired" counsel immediately after the trial.

Counsel testified that he spent at least thirty hours in pretrial preparation for the case. The trial court's order reflects that counsel's log sheet recorded

forty-five hours of pretrial preparation, which included investigation time. Counsel attempted to settle before trial and the Defendant never stated he did not want a settlement. Counsel pursued an extended suppression hearing as a remedy for the lost preliminary hearing tape. Counsel also attempted to exclude any witness testimony from those who viewed the Speedway photos. Counsel interviewed the witnesses before the trial. He pursued a defense based on the inconsistencies in witnesses' identification of the Defendant.

From the evidence before us, it appears that counsel's representation was within the range of competency demanded of criminal defense attorneys. Counsel investigated the case, made numerous attempts to locate the preliminary hearing tape, and submitted several motions to exclude evidence. There is evidence that counsel aggressively pursued plea negotiations at the behest of the Defendant. The record also reflects that counsel effectively cross-examined witnesses regarding their identification of the Defendant. Because the Defendant has failed to demonstrate that counsel's performance was not competent, we do not reach the evaluation of any alleged prejudice. Therefore, we conclude that this issue is without merit.

Accordingly, we affirm the judgment of the trial court in all respects.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE


_____
JOE G. RILEY, JUDGE