DAVID F. SWEENEY, JR. *et al. vs.* JOHN A. NOTTE, JR., *Governor, et al.*

JULY 24, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is a petition to the superior court under the Uniform Declaratory Judgments Act, G. L. 1956, chap. 30 of title 9. It seeks a declaration that those provisions of G. L. 1956, chap. 2 of title 22, which relate to the prevailing apportionment of seats in the house of representatives are in the light of the 1960 federal census violative of article XIII of amendments to the constitution of this state and of article XIV of amendments to the United States constitution. Hereinafter references to article XIII of amendments will mean to the constitution of this state and to article XIV will mean amendments to the United States constitution.

The petition also prays for injunctive relief and for certification to this court of questions of such doubt and importance as to affect the merits of the controversy. After a hearing, a justice of the superior court denied the petitioners' motion for a preliminary injunction and invoking the authority of G. L. 1956, §9-24-27, ordered the certification of certain questions as prayed. The cause is before us on said order.

The petition recites that respondents, His Excellency the Governor, the Secretary of State, and the members of the board of elections in their respective official capacities, are charged by constitution and statutes with the holding and conducting of elections for state officers, the certification and qualification of successful candidates and the enforcement of all laws relating thereto; and that petitioners are informed and believe that the 1962 primary and general election of candidates for the house of representatives will be conducted in accordance with the prevailing statutory apportionment of seats in the house of representatives, which apportionment, having been enacted by P. L. 1930, chap. 1526, now G. L. 1956, §22-2-4, has become obsolete and violates article XIII of amendments to the constitution

of this state and article XIV of amendments to the constitution of the United States.

Article XIII, §1, of amendments provides as follows:

"Composition of house of representatives. — The house of representatives shall never exceed one hundred members, and shall be constituted on the basis of population, always allowing one representative for a fraction exceeding half the ratio; but each town and city shall always be entitled to at least one member; and no town or city shall have more than one-fourth of the whole number of members. The general assembly may, after any new census taken by the authority of the United States or this state, reapportion the representation in conformity with the foregoing provisions. As soon as this amendment goes into effect, the general assembly shall divide each town and city into as many districts as it is entitled to representatives, and after each census, or as occasion may require, the general assembly may so divide each town and city, and one representative shall be elected from each district by the qualified electors thereof. Such districts shall be as nearly equal in population and as compact in territory as possible."

Although article XIV of amendments to the United States constitution provides for equal protection and for due process and petitioners have invoked both clauses, we deem it necessary to consider only whether the prevailing apportionment of seats in the house of representatives denies to petitioners the equal protection of the laws as guaranteed by said amendment, the pertinent language of which is as follows: "* * * nor deny to any person within its jurisdiction the equal protection of the laws."

The petition further recites that petitioners are residents of the cities of Cranston and Warwick respectively; that according to the bureau of the census 1960 report the population of Cranston is 66,766 and of Warwick is 68,504; that by the 1930 apportionment said cities were allotted five and three seats respectively; and that such continues

to be their allotted apportionment despite a marked increase in their population.

The petitioners also aver, and it so appears from the record, that by the terms of G. L. 1956, §22-2-4, the city of Woonsocket was allotted eight seats, the city of Central Falls four seats, and the town of West Warwick three seats, which representation said communities still enjoy although the 1960 census report reveals their population to be 47,-080, 19,858 and 21,414, respectively.

The petition as originally filed averred in substance that the general assembly had not reapportioned house seats since 1930 and that petitioners were informed and believed that no reapportionment would be enacted prior to the holding of the next primary and general election. Subsequent to said filing the general assembly gave first passage to a proposed constitutional amendment which, if again enacted by the legislature and approved by the people at the 1964 general election, would increase the limit on house seats from 100 to 125. Thereafter and before hearing, the petition was amended so as to acknowledge the action taken by the general assembly, averring, however, that such action afforded no relief to petitioners.

They further aver in substance that, in the light of the 1960 census report and by virtue of the constitutional provisions quoted *supra*, the inhabitants of the cities of Cranston and Warwick are entitled to increased representation, and that the inhabitants of other municipalities, more particularly those of Woonsocket, Central Falls and West Warwick, are not entitled to such over-representation as they presently enjoy.

In addition to the foregoing, it appears that petitioner David F. Sweeney, Jr. is a member of the house of representatives from the city of Cranston. As such he avers that if re-elected on the basis of §22-2-4 his title to the office will be in doubt. For reasons which will become ob-

vious, this contention does not require consideration in these proceedings.

On these premises, petitioners pray that the questions of law and the question of the constitutionality of G. L. 1956, chap. 2 of title 22, be certified to this court as provided by G. L. 1956, §9-24-27. Inconsistently they also pray that the superior court declare the unconstitutionality of chap. 2 of title 22, and temporarily enjoin respondents from performing their applicable duties pending such declaration. Further, they pray that the superior court appoint a commissioner or commissioners to devise a schedule of apportionment consistent with the population of the several municipalities as shown by the 1960 federal census and the formula contained within article XIII of amendments, and that the superior court decree the holding of elections of candidates to the house of representatives in accordance with such schedule or, in the alternative, that the election of representatives be held at large.

The petition was heard by a superior court justice who, on a finding that the relevant facts alleged had been established as true, denied petitioners' motion for a preliminary injunction but granted a motion that certain questions be certified to this court as being of sufficient doubt and importance as to affect the merits of the controversy. Pursuant thereto he certified thirteen questions.

The instant proceedings follow *Moore* v. *Langton,* 92 R. I. 141, 167 A.2d 558. In that case, however, we entertained serious, if unexpressed, doubts as to the propriety of the superior court's invoking the provisions of §9-24-27 in a proceeding brought under the Uniform Declaratory Judgments Act. Indeed, in *Rondoni* v. *Sherman,* 90 R. I. 322, at page 326, 158 A.2d 267, 269, we indicated such doubts. However, both cases involved serious questions of immediate import and for that reason we did not deem it desirable to delay a decision on the merits on procedural grounds.

The instant cause also involves grave questions of public concern and we are, therefore, constrained to consider the same in its present posture, even though we believe the legislature did not intend to permit a combining of petitions under the Uniform Declaratory Judgments Act with certifications under §9-24-27. Such certification in the present instance involves but a phase of the controversy in litigation. A petition filed pursuant to chap. 30 of title 9, however, constitutes the entire controversy with the obligation on the superior court to make the declaration prayed for with a right of appeal to this court.

In the interest of orderly procedure, therefore, we declare that we will not hereafter entertain certification of questions under §9-24-27 in proceedings commenced under the Uniform Declaratory Judgments Act.

Furthermore we deem it neither necessary nor desirable in these proceedings to consider and answer each specific question as certified. The first three questions relate to the nonconformance of the legislation in issue to article XIII of amendments to the state constitution, seven others raise the issue of equal protection, and the remaining questions are remedial in nature. For purposes of brevity and continuity we shall so group and consider them.

Although petitioners by their prayer challenge the constitutionality of chap. 2 of title 22, only §22-2-4 is specifically mentioned in the questions certified to us. This is presumably occasioned by the fact that it is this section which specifically enumerates those communities to which in 1930 the general assembly allotted two or more seats on the basis of their then prevailing populations, among which are Cranston, Warwick and those communities whose representation is herein under attack.

The petitioners are understandably content to limit the scope of their complaint to alleged disparities existing between communities which result from population shifts since the 1930 apportionment. We, however, are confront-

ed with the more fundamental question whether the prevailing apportionment denies to the individual elector the weight to which his vote is entitled, regardless of where he resides within this state. This proposition inheres by reason of petitioners' recourse to the equal protection guaranteed by article XIV of amendments.

Moreover, we are not here asked to consider the unconstitutionality of an act of the general assembly. Rather, we are asked whether by reason of their inaction the general assembly has suffered an apportionment statute, the constitutionality of which at the time of its enactment is not seriously questioned, to become unconstitutional in that it no longer conforms to article XIII of amendments. Undoubtedly an act may become unconstitutional by reason of legislative inaction just as a constitutional act may be unconstitutional in application. *Nashville, Chattanooga & St. Louis Ry.* v. *Walters,* 294 U. S. 405. No question exists as to the jurisdiction of this court to strike down a statute found to be unconstitutional, nor to enjoin public officials in the exercise of duties assigned to them thereunder. To what extent we may interfere in the case of legislative inaction, however, leads to grave questions involving the separation of powers.

Be that as it may, we are disturbingly confronted with an overriding and paramount question of tremendous import, namely, does the formula of apportionment contained within article XIII of amendments violate the equal protection clause of article XIV of amendments to the United States constitution? This article is the supreme law of the land and supersedes the provisions of a state constitution which are in conflict therewith. *Cooper* v. *Aaron,* 358 U. S. 1.

It would be an inexcusable dereliction of judicial responsibility if, cognizant of the overriding question with which we have been confronted, we were to hold that the legisla-

ture has a constitutional obligation to reapportion the house of representatives on the basis of the 1960 census and the formula provided by article XIII of amendments and, complying therewith, the legislature did so apportion only to have the federal judiciary later declare that such reapportionment constituted a denial of equal protection.

Subsequent to *Baker* v. *Carr*, 369 U. S. 186, wherein it was held that an elector had standing to challenge the constitutionality of an apportionment statute, or, inferentially, such legislative inaction as is here present, and that the same constituted a justiciable question, a number of appellate courts, state and federal, have been confronted with the question now before us. *Maryland Committee For Fair Representation* v. *Tawes, Md.,* 180 A.2d 656; *Scholle* v. *Hare,* 369 U. S. 429; *Toombs* v. *Fortson,* 205 Fed. Supp. 248; *W.M.C.A., Inc.* v. *Simon,* 82 Sup. Ct. 1234. All have recognized, as must we, that the states are bound by the decisions of the United States Supreme Court.

Although *Baker* v. *Carr* held that federal courts had jurisdiction to inquire into the validity of state legislative apportionment acts, the supreme court's remand subsequently of *Scholle* v. *Hare* to the Michigan court suggests that the question is reviewable in the state courts as well. Indeed there is a strong implication that recourse to the state judiciary by an elector complaining that his vote has been so debased as to be the subject of invidious discrimination will, unless the state courts fail to respond, forestall federal intervention.

We acknowledge that we are troubled by the co-ordinate relationship which exists between this court and our general assembly not present vis-a-vis the latter and the federal judiciary. Notwithstanding the delicacy of the problem, however, we conceive it to be our clear duty in the light of the majority and concurring opinions in *Baker* v. *Carr, supra,* and the remand in *Scholle* v. *Hare, supra,* as

well as that of a United States circuit court in *W.M.C.A., Inc.* v. *Simon, supra,* to consider whether the constitutional apportionment formula of article XIII of amendments denies to these petitioners and all electors similarly affected the equal protection guaranteed by the United States constitution. Indeed in *W.M.C.A., Inc.* the court found to be without merit the state's contention that the apportionment complained of was in compliance with the provisions of the New York state constitution.

The population of this state, as shown by the 1960 federal census, is 859,488. On the basis of one hundred seats the population factor to be applied is 8,594. An examination of the respective populations of our several municipalities reveals that eleven communities have a combined population of less than 3 per cent of the state's inhabitants, but are represented by 11 per cent of the total number of seats in the house. Moreover, each of the aforesaid communities has a population of less than one half of the 8,594 factor. Reapportionment on the basis of our constitutional formula would result in a retention of such a glaring inequity. The city of Pawtucket with more than 9 per cent of the state's inhabitants would be entitled to nine seats as contrasted to the eleven seats representing less than 3 per cent of the state's inhabitants. The city of Providence would be entitled to approximately twice the number of seats which would be necessarily allotted to the aforesaid eleven communities, although Providence has more than eight times the number of inhabitants residing in said communities. The inhabitants of the city of Warwick, although outnumbering those in said communities by a ratio of approximately 17 to 6, would be entitled to three seats less. Ten towns would be entitled to but one representative although each of such towns has a population ratio ranging from a minimum of 12 to 1 to a maximum of 22 to 1 over the town of New Shoreham with its population of 486.

Sharply disproportionate representation may likewise be noted as between towns without regard to cities in four of the five counties. In Newport county, for example, Tiverton inhabitants would be subjected to discrimination at a ratio of 10 to 1 and Middletown inhabitants, outnumbering their neighbors in Little Compton by 7 to 1, would be entitled to no greater representation than the latter.

An examination of Kent county reveals that West Warwick, which would be entitled to two members, has a population in excess of eighteen times that of its neighbor West Greenwich. In Washington county, the ratio of discrimination which would exist between South Kingstown and Charlestown is slightly more than 6 to 1 in the latter's favor. The inhabitants of Foster in Providence county would enjoy a disparity advantage four times that of the inhabitants of North Providence.

These are but some of the examples of discrimination which would necessarily result from reapportionment complying with article XIII of amendments. It serves no purpose to burden this opinion with all possible comparisons. It suffices to observe that the examples cited, as well as others which might be, demonstrate a frequency of vote debasement by a ratio of 4 to 1.

The attorney general contends, and petitioners concede, that apportionment along geographical, county, municipal or urban versus rural lines does not necessarily constitute a denial of equal protection if the rationale of such methods can be justified. We are in full accord with such contention, but it is equally true that historical recourse to such apportionment formulae cannot be justified if it results in invidious discrimination. The dilution of the vote of a majority of electors to one fourth of that enjoyed by others is, in our opinion, so unjust as to be invidiously discriminatory.

*In Toombs* v. *Fortson, supra,* decided May 25, 1962, a federal circuit court passing on the question of apportion-

ment in Georgia suggested that representation in one house of the general assembly might be capricious, arbitrary and grossly discriminatory if the other chamber were apportioned so as to conform reasonably to population. Whether so sweeping a proposition would be approved by the United States Supreme Court is open to conjecture. Assuming, however, that such might be the case, it is of no assistance in preserving article XIII of amendments in its entirety. By constitutional edict, article XIX of amendments to the constitution of this state and pursuant thereto chap. 1 of title 22, our senate is likewise apportioned by assuring to each municipality, regardless of its population, a minimum of one seat in the upper chamber. Since the total number of seats in the senate is now 46 as compared with 100 in the house, the discrimination resulting thereby is such as to deny to the apportionment formula for the house the comfort to be derived from the observation made by the federal court in *Toombs* v. *Fortson, supra.*

Nor do we derive any aid from the historical fact that article V of our constitution originally ordained the formula which, except for changes not affecting the problem at hand, purportedly continues to be the organic law of this state. That article was adopted in 1842 prior to article XIV of amendments to the federal constitution. When the latter article was approved it became the supreme law of the land and conflicting state constitutional provisions ceased to have any standing even though such conflict did not become the subject of adjudication for years thereafter.

We are constrained to conclude therefore that the limitation of one hundred members and the securing of representation to each municipality, taken together, is an apportionment formula which when followed results in a denial of equal protection within the meaning of article XIV of amendments as laid down by the United States Supreme Court. This is not to say, however, that neither

of these provisions can be preserved, nor that article XIII of amendments is void in its entirety.

We are of the opinion that such article validly imposes an obligation on the general assembly to reapportion after every federal or state census whenever it appears therefrom that by reason of population shifts the prevailing apportionment no longer reflects reasonably equitable representation. The use of the verb "may" rather than "shall" was prompted, it seems reasonable to believe, by the fact that any census taken at a future time or times might reveal no necessity to reapportion. Whenever such a census does disclose drastic population shifts, however, the obligation on the general assembly is mandatory.

Nothing more than a perfunctory analysis of the 1960 census, revealing the inequities considered herein and the grossly unequal representation as presently distributed among the inhabitants of this state, is required for this court to determine that there now exists an obligation on the general assembly to reapportion conformably to said census and this opinion. The resolution approved April 25, 1962 proposing an amendment to article XIII of amendments cannot be said to comply with such obligation. Assuming that it would receive second passage and be subsequently approved by the people, and both such assumptions are purely speculative, it would fail to correct the basic defect heretofore considered.

Mr. Justice Harlan, dissenting in *Baker* v. *Carr* and *Scholle* v. *Hare, supra,* lamented a failure of the majority to lay down guide lines or speak definitively on what might constitute apportionment not so invidiously discriminatory as to deny equal protection. We conceive it to be incumbent upon us to speak so definitively as to be of assistance to the general assembly which we assume will seek to act in conformity to the legal principles herein enunciated. It is for them and not for this court to reapportion the membership of the house.

As heretofore observed the mathematical factor which would make for ideal apportionment among the inhabitants is 8,594. It is contended, however, that an apportionment formula need not be ideal if it is reasonably equitable. We are in complete accord with such contention. Moreover, the general assembly is obligated to conform to so much of article XIII of amendments as does not result in a gross debasement or an impoverishing dilution of some segments of the electorate's franchise by reason of a residential preference which, although not intended as such, is the inescapable result of representation for every municipality within the limitation of one hundred members.

If the general assembly deems it advisable to provide for municipal representation generally, at the same time retaining the limitation of one hundred members, it is possible to do so by allotting one representative to each municipality having a population in excess of one half of said factor. The more densely populated municipalities would of course be entitled to an additional representative for every 8,594 inhabitants in excess of the total number of inhabitants of the least populated municipality entitled to a single representative. Such an apportionment method would require the consolidation of those municipalities not entitled to a representative into as many representative districts as would result from dividing the total population of said municipalities by a factor approximating the population of the least populated municipality entitled to minimum representation.

Alternately, the general assembly, if they deem it advisable, may ignore the limitation of one hundred members and allot a representative to every municipality, disregarding sparsity of population. This method of apportionment, however, would require enlarging the house so as to provide every city and town with representation based on a population factor of not more than twice the popula-

tion of the least populated town in the state. Both such possible methods presuppose that the legislature would continue to retain the present identity of all thirty-nine cities and towns.

We turn now to a consideration of the questions relating to the relief for which petitioners pray. We do so with a profound comprehension of the problems with which the co-ordinate branches of the government will be confronted as a result of our deliberations.

In the absence of constitutional warrant to the contrary this court has no authority to require the general assembly to meet in special session, nor to require the governor to exercise his constitutional prerogative to call such a session. Furthermore, we are not persuaded that our obligation to resolve the justiciable issues herein considered is so broad as to require us to hold that the superior court would be warranted in supervising reapportionment of the house of representatives, in the unlikely event that the general assembly should fail to do so. Such a declaration would be in the nature of mandamus by duress. In light of the exclusive prerogative of the general assembly to apportion the membership of the house, we will respect the co-ordinate relationship existing between us.

We do deem it obligatory upon us, however, to observe that if the general assembly fails, within such reasonable time as circumstances may permit, to reapportion the house of representatives consistent with the equal protection guaranteed by the United States constitution, a federal court will probably do so.

We are therefore of the opinion that the superior court should declare that article XIII of amendments vests the general assembly with exclusive jurisdiction to apportion the house; that the obligation to reapportion is mandatory whenever, after a federal or state census, it becomes apparent that the prevailing apportionment constitutes a

denial of equal protection; and that such an obligation presently exists to reapportion in such manner as to avoid such invidious discrimination as hereinabove discussed.

The record in the cause, with our opinion endorsed thereon, is remanded to the superior court for entry of a declaratory decree in accordance with this opinion.

ROBERTS, J. concurring. I agree with the court's conclusion that the provisions of G. L. 1956, §22-2-4, deprive a substantial segment of the people of this state of reasonable equality of representation in the house of representatives. It is my further opinion, however, that the provisions of chap. 2 of title 22, taken as a whole, preclude equality of representation in the house of representatives for another segment of the population, specifically, those who reside in towns that pursuant to §22-2-2 are restricted to representation therein by a single member. There is nothing in the record certified to this court that warrants a holding that the present classifications of the towns and cities of the state in the apportionment of representation in the house of representatives are either founded in reason or consistent with the right to equality of representation guaranteed by the equal protection clause. The numerous gross disparities in the quantum of representation conferred upon individual citizens that result therefrom, in my opinion, constitute invidious discrimination and render the classifications set out in that statute repugnant to the equal protection clause of the fourteenth amendment to the federal constitution.

The power to apportion the membership of the house of representatives is by the provisions of article XIII of amendments to the constitution of this state textually committed to the general assembly. Article XIII provides for a house of representatives that shall not exceed a membership of one hundred, which shall be apportioned by the legislature on the basis of population, and that each city and town shall be entitled to be represented therein by at

least one member. Further provision is made therein for the reapportionment of the membership of the house after the taking of any federal census and for the election by districts of the members representing those municipalities which are entitled to be represented by more than one representative. It may be properly noted at this point that the duty thus imposed upon the legislature to reapportion the house is a continuing duty, and when a legislature fails to do so the duty is cast upon the next succeeding legislature. *Opinion of the Justices,* 148 Me. 404.

It was made clear by the United States Supreme Court in *Baker V. Carr,* 369 U. S. 186, that a justiciable question is raised when legislation apportioning representation in a state is challenged on the ground that it deprives a citizen of equality of representation in violation of the equal protection clause of the fourteenth amendment to the federal constitution. That court made it equally clear in *Scholle* v. *Hare,* 369 U. S. 429, that primarily the duty of hearing and determining these questions rests upon the state courts. I am convinced, however, that because the power to apportion in this state is textually committed by the constitution to the legislature, the power of this court in the matter extends only to a determination of the constitutionality of apportionment legislation. The courts of this state, in my opinion, are without power, inherent or conferred, to apportion the house of representatives either directly or indirectly by resort to the equity jurisdiction. I have not been persuaded that the courts of this state possess any power to enjoin the elective process established by the legislature absent some showing of action by an officer or board in excess of the authority conferred by such legislation or of the invalidity of that legislation on constitutional grounds. In the instant action the laws of the state establishing the elective process have not been challenged.

When it is found that an apportionment statute is repugnant to the equal protection clause of the federal constitution, the duty to provide for an apportionment that will not be in conflict with the provisions of the fourteenth amendment as the supreme law of the land is cast upon the legislature. See *Cooper* v. *Aaron,* 358 U. S. 1, This court is not warranted in concluding that this coordinate branch of the state government, having been made aware of the unconstitutionality of the existing apportionment legislation, will not move promptly and effectively to provide for an apportionment that will be consistent with the supreme law of the land.

I am aware of the difficulty involved in the enactment of apportionment legislation pursuant to the provisions of article XIII that will not invade the federally protected right of the individual to equality under law as provided for in the fourteenth amendment to the federal constitution. However difficult this task may be, I cannot agree that at this time we should hold it to be impossible of accomplishment. Therefore, I do not concur in the view of my associates that article XIII necessarily is repugnant to the equal protection clause of the fourteenth amendment. Neither can I subscribe to the proposition clearly implied in the majority opinion that this court properly may anticipate a legislative inability to enact an apportionment statute in compliance with the provisions of article XIII that would not violate the equal protection clause. Whether the elimination of some of the provisions contained in article XIII might serve to make the enactment of apportionment legislation thereunder less difficult is a matter in which this court can properly have no interest, it being, in my opinion, a matter of policy to be determined by the legislative and executive branches of the government.

It is incumbent upon the legislature to enact apportionment legislation that will eliminate the disproportionate

representation that results from the terms of the instant statute. It is not to be presumed that the legislature will fail to perform its duty in this respect. In such circumstances then this court should exercise an appropriate restraint and refrain from advising the coordinate branches of government as to the method by which they should comply with their duty in the premises. I am of the opinion, however, that we may with propriety direct the attention of the legislature to the concept that the equal protection clause of the federal constitution is concerned with legislative classifications providing for the distribution of benefits and burdens among the people. Where such legislative classifications either arbitrarily or irrationally discriminate between persons of the same circumstances, usually they are held to be violative of the equal protection clause.

Legislative classifications, however, do not necessarily violate the equal protection clause merely because they are in some measure discriminatory. Unless the discrimination is irrational and not reasonably related to the objectives of the state action, the constitutional right to equality under the law is not invaded. In *Baker V. Carr, supra,* Mr. Justice Douglas in his concurring opinion noted that the weighting of the vote in one district over that in another district may not amount to the invidious discrimination contemplated by the equal protection clause.

The strong implication in *Baker* v. *Carr, supra,* is that there must be some reasonable relationship between population and the apportionment of representation if such an apportionment is to escape being labeled as invidiously discriminatory. Whether, in apportioning representation, departures from substantial equality of population as the basis therefor amount to invidious discrimination must be determined in the light of all other existing relevant factors. I am persuaded that the legislature, in apportioning, properly may exercise a reasonably broad discretion to reconcile

geographical, economic, and social factors with such disparities as to equality of population without such discrimination as may result therefrom necessarily amounting to the constitutionally inhibited invidious discrimination. See *Maryland Committee For Fair Representation* v. *Tawes,* 228 Md. 412, 434, 180 A.2d 656, 668, and *McGowan* v. *Maryland,* 366 U. S. 420, 426.

Of course, when these classifications impinge upon personal liberties, they will be scrutinized closely to determine the reasonableness of the discrimination therein as affecting the right to equality under law. I do not share in the opinion of the court that the legislature is unable to enact any legislation in this area that would withstand such scrutiny. To so hold is to attribute to this court the possession of clairvoyant powers, with which, of course, it is not endowed. In other words, I cannot agree that this court should now foreclose legislative action pursuant to article XIII of the amendments by anticipating the unconstitutionality of apportionment legislation that has been neither enacted nor proposed.

Stated briefly then, it is my opinion that this court should herein advise the coordinate branches of the state government of the unconstitutionality of the present apportionment of the house of representatives as provided in chap. 2 of title 22 that those branches of the government may with reasonable promptness proceed to provide for substantial equality of representation in the house by enacting appropriate and valid legislation. I am convinced that to such an end the superior court should be directed to presently refrain from declaring any rights under the instant petition but to retain jurisdiction thereof for such period of time as it deems will be sufficient to permit the general assembly next to be elected to consider the problems involved in the enactment of legislation bringing about an apportionment that would be consistent with the equal protection clause.

It is my opinion that such a disposition of the matter for the present would enable the legislature to give the problem the dispassionate and impartial consideration it so clearly merits. That such consideration of the problem by the legislature is highly desirable becomes apparent with the realization that the ultimate solution thereof may possibly require an abandonment of the traditional policy of this state to give to each city and town representation in the house by one member thereof at least. A thorough exploration of alternative solutions may well render unnecessary an abandonment of this long-standing political policy conferring overrepresentation upon some of the less populous communities.

However, because four members of the court are in agreement that the cause should be remanded to the superior court for the entry of a decree in accordance with the opinion of the majority, I will concur in that order, albeit reluctantly.

*Gallogly, Beals & Tiernan, David F. Sweeney, Robert O. Tiernan,* for petitioners.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for respondents.