**Jonathan K. FARNUM, et al.**

v.

**Robert BURNS, et al.**

**Civ. A. No. 82–0500.**

United States District Court,
D. Rhode Island.

Aug. 11, 1982.

Max Wistow, Providence, R.I., for plaintiffs.

Eileen G. Cooney, Sp. Asst. Atty. Gen., Providence, R.I., for defendants.

Before BOWNES, Circuit Judge, ZOBEL, District Judge, and PETTINE, Senior District Judge.

## OPINION AND ORDER

PETTINE, Senior District Judge.

Plaintiffs in this action are all citizens and registered voters of the State of Rhode Island. Defendants consist of the Secretary of State and the Rhode Island Board of Elections. Plaintiffs challenge the constitutionality of Rhode Island's plan to conduct the September 1982 primary and November 1982 election for the office of state senator according to the state senatorial apportionment scheme enacted in 1974. This scheme was apparently based on the 1970 federal census. Plaintiffs contend that the results of the 1980 federal census indicate that massive population shifts have occurred among senatorial districts in Rhode Island since the 1970 census, rendering use of the 1974 senatorial apportionment lines in the 1982 elections invalid under the "one man/one vote" principle enunciated in *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). In addition, plaintiffs argue that use of the 1974 senatorial district lines in the 1982 elections would violate the Rhode Island constitution as interpreted in *Sweeney v. Notte,* 95 R.I. 68, 183 A.2d 296 (1962).[1]

1. *See* note 7 *infra.*

Plaintiffs thus seek a judgment declaring the proposed use of the 1974 senatorial lines in 1982 to be unconstitutional. In addition, plaintiffs request that this Court enjoin such use of the 1974 lines and order that the 1982 Rhode Island elections be conducted under a constitutionally acceptable senatorial apportionment scheme. The plaintiffs suggest that this Court either order the state to fashion a constitutionally valid scheme for the 1982 elections, or implement a court-devised scheme. For the reasons that follow, this Court declares that use of the 1974 senatorial district lines in 1982 would violate the Equal Protection Clause, and enjoins Rhode Island from conducting state senatorial elections until such time as a constitutionally acceptable reapportionment plan is devised.[2]

## FACTUAL BACKGROUND

The recent history of reapportionment in Rhode Island bears some mention in this case.[3] On April 9, 1982 a statutory reapportionment plan, based on the 1980 federal census, for state senatorial and representative districts and United States congressional districts became law. This statute repealed the 1974 Rhode Island reapportionment scheme. On June 7, 1982, however, the Rhode Island Supreme Court affirmed a judgment of the state superior court that struck down the new senatorial redistricting provision on federal and state constitutional grounds. *Licht v. Quattrochi*, C.A. Number 82–0259, (R.I. July 7, 1982). The Rhode Island legislature then enacted a new reapportionment plan for state senatorial districts.

The Governor, however, vetoed this bill. He ordered the legislature to reconvene in a special session for the purpose of re-enacting the same bill with an effective date *after* the November 1982 elections in order to afford an opportunity to test the constitutionality of the new senatorial plan in the courts. The legislature reconvened and passed H9101, which provides that the new senatorial reapportionment plan will be effective beginning with the 1984 elections. In addition, section one of H9101 repealed the portion of the April 1982 statute that abrogated the 1974 senatorial lines, thus reviving them for use in the 1982 elections.[4]

On August 4, 1982, this Court heard argument from counsel on the merits of this case. The parties agreed that, in light of the 1980 census, the 1974 senatorial district lines do not provide for substantial equality of votes. Nonetheless, the defendants contended that this Court should refrain from ordering that the 1982 senatorial elections proceed under different lines because such an order would prevent Rhode Island from conducting its elections on time. Plaintiffs, however, argued that Rhode Island could not possibly conduct any of its elections on schedule *in any event* because the chaotic attempts to reapportion the senate have irremediably delayed the state's election machinery. Plaintiffs offered to produce deposition testimony from the members of the Providence Board of Canvassers that the Board cannot complete the tasks necessary to hold the fall elections under the 1974 senate lines in enough time to insure that there can be a September 14th primary. However, plaintiffs represented that the Board members would testify that all *other* elections in 1982 could occur on time

2. Plaintiffs seek certification of this case as a class action under Fed.R.Civ.P. 23(b)(2). They wish to represent the class of all registered voters in the State of Rhode Island. The defendants have not objected to class certification, and the Court perceives no reason why this suit should not be certified because it meets all the requirements of Rule 23. This case is therefore certified as a class action under Rule 23(b)(2).

3. Except where otherwise noted, all facts are drawn from the stipulation of facts which the

parties have submitted to the Court and which they agree contain all facts necessary for a resolution of the apportionment issue.

4. In an advisory opinion issued on July 23, 1982, two members of the Rhode Island Supreme Court stated that the court's invalidation on July 7th of the first senatorial reapportionment lines automatically "revivified" the 1974 senatorial lines. *See* Ex. B., *Parties' Stipulations to Facts.*

if the Board was not required to prepare for the senate race. The plaintiffs thus argued that, because the fall senate elections could not occur on schedule under any circumstances, equitable principles do not counsel that this Court refrain from ordering that the senate elections be conducted according to new lines. Any additional delay and disruption, they argued, would be minimal.

Rather than receive live testimony on this issue, the Court ordered all parties to submit to the Court any deposition testimony relevant to whether the fall senate elections can occur on schedule. The Court has now received and read these depositions.

The deposed officials, who were from the cities of Providence and Pawtucket, testified that after the first reapportionment statute was passed, all of the senate lines were redrawn so as to conform to it. This took about two months. The election officials explained that going back to the 1974 lines is not simply a matter of substituting one set of lines for another; reinstating the 1974 lines requires, *inter alia*, setting up different polling places and rechecking and revising the street lists of voters. We realize that the State has offered to assist local election officials in every way possible including providing financial assistance and furnishing additional personnel. We are also aware that the predictions of the election officials are in the nature of self-fulfilling prophecies; this, however, is a factor over which neither we nor the State have any control.

Based on the deposition testimony, the Court is persuaded that if the election officials of Providence and Pawtucket are forced to reinstate the 1974 senate lines, it is highly probable that none of the fall elections can proceed as scheduled in these two municipalities, which comprise about half of the State's population. The deposition testimony makes it a certainty that the other elections to be held in the fall can take place as scheduled if local officials are not required to prepare for the State senate races.

## DISCUSSION

### I. *One Man/One Vote*

#### A. *Numerical Deviation*

"The Equal Protection Clause demands no less than substantially equal state legislative representation for all citizens, of all places...." *Reynolds v. Sims,* 377 U.S. 533, 568, 84 S.Ct. 1362, 1385, 12 L.Ed.2d 506 (1964). A state must, therefore, make "an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable." *Id.* at 577, 84 S.Ct. at 1390. In the instant case, the parties agree that use of Rhode Island's 1974 senatorial districts for the 1982 elections do not comport with this standard. *See* Defendants' Memorandum of law at page 4 (August 4, 1982). ("Defendants submit that [the] ... 1974 plan ... does not currently reflect substantially equal senatorial districts.").

The 1980 federal census reveals that massive population shifts have occurred among the senatorial districts drawn up in 1974. The populations of these senatorial districts are now grossly disproportionate. Using 1980 census figures, the "ideal"[5] district consists of Eighteen Thousand, Nine Hundred and Forty-three (18,943) persons. The largest district under 1974 lines consists of Twenty-nine Thousand, One Hundred and Sixty-four (29,164) persons; the smallest consists of Twelve Thousand, Four Hundred and Twenty-nine (12,429). Thus, the population of the largest district exceeds the ideal by Fifty-four (54%) percent; the smallest deviates from the ideal by Thirty-four (34%) percent, the "total deviation" is therefore Eighty-eight (88%) percent. The "average deviation" is Fourteen (14%) percent. Finally, the ratio of population in the largest district to that in the smallest district is 2.35 to 1.

---

**5.** For purposes of this opinion, the "ideal district" is the figure arrived at by dividing the state's total population by fifty, the number of senatorial districts in Rhode Island. "Total deviation" will refer to the sum of the percentage deviation of both the largest district and the smallest district from the ideal district. "Average deviation" will refer to the average of the percentage deviation of all districts from the ideal district.

■ These gross population disparities obviously do not pass muster under the *Reynolds v. Sims* "substantial equality" test. Moreover, they far exceed any deviations that the Supreme Court has ever upheld. *See, e.g., White v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973) (total deviation 9.9%); *Gaffney v. Cummings,* 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1974) (total deviation 7.83%); *Mahan v. Howell,* 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973) (total deviation 16.4%). Finally, even assuming that these deviations are not *per se* unconstitutional and could be justified by the state, Rhode Island has offered no justification for such shocking malapportionment. *See Connor v. Finch,* 431 U.S. 407, 418, 97 S.Ct. 1828, 1835, 52 L.Ed.2d 465 (1974) (deviations of more than 10% can be justified only if "based on legitimate considerations incident to the effectuation of a rational state policy" (quoting *Reynolds v. Sims,* 377 U.S. 533, 579, 84 S.Ct. 1362, 1390, 12 L.Ed.2d 506 (1964)).

### B. *Decennial Reapportionment*

In *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Supreme Court stated that the requirement of substantial equality among voting districts "does not mean that States cannot adopt some reasonable plan for periodic revision of their apportionment schemes." *Id.* at 583, 84 S.Ct. at 1392. The Court then suggested that reapportionment once every ten years would be a "rational approach to readjustment of legislative representation." *Id.* The Court reasoned that "[l]imitations on the frequency of reapportionment are justified by the need for stability and continuity in the organization of the legislative system...." *Id.* Although declining to hold that decennial reapportionment is constitutionally required, the Court stated that "reapportionment ... with less frequency ... would assuredly be constitutionally suspect." *Id.* at 584, 84 S.Ct. at 1393. Based on this language in *Reynolds,* one could thus argue that, despite the population shifts exposed by the 1980 census, Rhode Island is not constitutionally compelled to reapportion its senate lines until 1984, because its last senatorial reapportionment occurred in 1974. *See Flateau v. Anderson,* 537 F.Supp. 257, 264 (S.D.N.Y.1982) *(per curiam)* (three judge court); *Sims v. Amos,* 336 F.Supp. 924, 941 (M.D.Ala.) *(per curiam)* (three judge court), *aff'd mem.,* 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972).

■ The Court must reject this argument. The language in *Reynolds* cannot possibly mean that, for purposes of the 1982 elections, Rhode Island is free to ignore the results of the 1980 census and can constitutionally use patently malapportioned senatorial districts. The right to an equal vote and to equal representation is too important to permit a state such freedom. Furthermore, subsequent opinions of the Supreme Court indicate that a state can constitutionally be compelled to reapportion in time for the first election after a census, even where the existing reapportionment scheme is less than ten years old.

In *Sixty-Seventh Minnesota State Senate v. Beens,* 406 U.S. 187, 92 S.Ct. 1477, 32 L.Ed.2d 1 (1972) *(per curiam),* the plaintiffs in 1971 challenged the constitutionality of a reapportionment scheme enacted in 1966. They requested the district court to order the reapportionment of Minnesota legislative districts, according to 1970 census data prior to the 1972 state elections. The Minnesota legislature had attempted to reapportion, but the Governor vetoed its reapportionment act. The district court declared that use of the 1966 lines in the 1972 elections would be unconstitutional and imposed a court-ordered reapportionment plan on the state, for use in these elections. On appeal, although the 1966 scheme was less than ten years old, the Supreme Court stated that "under [the] circumstances [of the case] judicial relief was appropriate." *Id.* at 195, 92 S.Ct. at 1483.

Another case that indicates that a state may be compelled to reapportion prior to the first election after a census regardless of the age of the existing apportionment plan is *Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971). In *Whitcomb,* the district court in 1965 had ap-

proved the state's plan of reapportionment based on the 1960 federal census. Because of subsequent decisions of the Supreme Court, however, it became apparent that the 1965 plan had actually *not* been constitutional when enacted. Thus, in 1969 the district court invalidated the 1965 plan because of the same population disparities that the court had thought permissible in 1965.

On appeal, the state argued that, under *Reynolds v. Sims,* "a State cannot be compelled to reapportion itself more than once in a ten year period." Id. at 163, 91 S.Ct. at 1879. The Supreme Court rejected this argument, noting that "[s]uch a reading misconstrues the thrust of *Reynolds* in this respect." *Id.* The Court explained that *Reynolds* had suggested decennial reapportionment as a "presumptively rational method [in order] to avoid 'daily, monthly, annual or biennial reapportionment' as population shifted throughout the State." *Id.* (quoting *Reynolds v. Sims,* 377 U.S. at 583, 84 S.Ct. at 1392–1393). Furthermore, the Court stressed that in *Reynolds* it "was careful to note that 'we do not mean to intimate that more frequent reapportionment would not be constitutionally permissible or practically desirable.'" *Id.* at 163 n. 43, 91 S.Ct. at 1879 (quoting *Reynolds v. Sims,* 377 U.S. at 584, 84 S.Ct. at 1393).

Thus, the Supreme Court in *Whitcomb* upheld the district court's 1969 reapportionment order. In doing so, the Court dispelled any notion that a state's interest in "stability and continuity of organization of the legislative system," *Reynolds v. Sims,* 377 U.S. at 583, 84 S.Ct. at 1393, absolutely frees it from having to reapportion more than once in a ten year period. *Accord Honsey v. Donovan,* 236 F.Supp. 8, 20–21 (D.Minn.1964) (three judge court) (Blackmun, Circuit J.) (invalidating 1959 reapportionment plan in 1964). In sum, this Court holds that use of the 1974 senatorial lines in the 1982 Rhode Island elections would be unconstitutional in light of the population shifts revealed by the 1980 federal census [6] results [7].

## II. *Remedy*

■ The Supreme Court has acknowledged that, in cases involving unconstitutional malapportionment, Courts must fashion relief according to the "well-known principles of equity." *Reynolds v. Sims,* 377 U.S. 533, 585, 84 S.Ct. 1362, 1393–1394, 12 L.Ed.2d 506 (1964). *Accord Roman v. Sincock,* 377 U.S. 695, 711–12, 84 S.Ct. 1449, 1458–1459, 12 L.Ed.2d 620 (1964). *See Ely v. Klahr,* 403 U.S. 108, 113–15, 91 S.Ct. 1803, 1806–1807, 29 L.Ed.2d 352 (1971). Furthermore, the Court has made it clear that equitable principles may require a court *not* to interfere with the conduct of rapidly upcoming elections where the election machinery is already in gear even where the existing apportionment scheme clearly violates the "one man/one vote" principle. *E.g., Roman v. Sincock,* 377 U.S. at 709–12, 84 S.Ct. at 1457–1459; *Reynolds v. Sims,* 377 U.S. at 585–86, 84 S.Ct. at 1393–1394.

---

**6.** The Court wishes to emphasize that its holding as to frequency of reapportionment is limited to the specific facts of this case. At the hearing held on August 4, 1982, counsel agreed that Rhode Island received the 1980 census data in May of 1981. Thus, Rhode Island had a more than reasonable opportunity to enact a constitutionally valid reapportionment plan prior to the 1982 elections. This Court expresses no opinion as to whether it would be unconstitutional not to reapportion prior to the first elections after a census where, for example, the elections are scheduled to occur two months after census data becomes available.

**7.** As noted earlier, plaintiffs also contend that use of the 1974 senatorial reapportionment scheme in 1982 would violate the Rhode Island constitution as interpreted in *Sweeney v. Notte,* 95 R.I. 68, 183 A.2d 296 (1962). Because the Court has found that use of this scheme in 1982 would violate the federal constitution, the Court need not reach this pendent state law claim. However, the Court wishes to note that it is highly doubtful whether the Rhode Island constitution requires the Rhode Island legislature to reapportion prior to the first elections after a census. *See Opinion to the Governor,* 95 R.I. 109, 185 A.2d 111, 117–18 (1962) (legislature's determination of impossibility of reapportioning according to 1960 census before 1962 elections is presumed not to violate constitutional duty enunciated in *Sweeney* to reapportion after a census "within such reasonable time as circumstances ... permit").

*Accord Cosner v. Dalton,* 522 F.Supp. 350, 364 (E.D.Va.1981) (three judge court) (Butzner, Circuit J.). Thus, to avoid disruption of a state's normal election processes, lower courts have permitted impending elections to proceed under unconstitutional apportionment lines. *E.g., Cosner v. Dalton,* 522 F.Supp. at 364; *Martin v. Venables,* 401 F.Supp. 611, 621 (D.Ct. 1975) (Newman, J.) (apportionment of city council districts).

■ But here, the election machinery is not in gear; it is stalled. And unlike the cases adverted to above, positive action by us is the only way of insuring that the elections for all offices except State senator go forward as scheduled. Based on the only evidence we have, we are faced on the one hand with the definite problem that if the clearly unconstitutional senate lines are implemented, there will be no election at all as scheduled, and on the other hand with the certainty that, if the senate elections are enjoined, the others will proceed on time. Equity clearly requires that we order immediate relief at this time.

The Court therefore enjoins the State of Rhode Island from conducting the 1982 senatorial elections according to the 1974 senatorial apportionment plan. The State is enjoined from holding the senatorial elections until such time as a constitutionally permissible apportionment plan is devised. All preparations on both the state and local levels for the 1982 senatorial elections are to cease until such a plan is adopted. The State Board of Elections and the local boards of canvassers will thus be able to devote all their time to preparation for the other fall elections, which this Court is convinced can now occur on schedule.