Alice **BROWN**, Individually and on Behalf of Others Similarly Situated

v.

Francis J. **DEAN**, Jr., Leo P. Baronian, and Roland A. Dumont, Individually and in their Official Capacities as Members of the Board of Canvassers of the City of Providence.

Civ. A. No. 82–0701.

United States District Court, D. Rhode Island.

Oct. 28, 1982.

Boyajian, Coleman & Harrington by Alden C. Harrington, Providence, R.I., for plaintiff.

Richard Tallo, City Sol. by Acting City Sol. Gerard DeCelles, Providence, R.I., for defendant.

Hugo Ricci, Jr., Providence, R.I., for defendant intervenor.

## OPINION

SELYA, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983, the Voting Rights Act, 42 U.S.C. §§ 1971, 1973 *et seq.* and the Fourteenth and Fifteenth Amendments to the Constitution of the United States, seeking declaratory and injunctive relief against the use by defendants, members of the Board of Canvassers of the City of Providence, of a polling place located in a facility at 242 Admiral Street, Providence (which facility is also known as "Storti's") and to transfer the location of that polling place to the Community Center at the Chad Brown/Admiral Terrace Housing Project, Providence ("Chad Brown"). Plaintiff alleges that the operation of the voting facility at Storti's abridges the free exercise of the right to vote of black voters within Voting District 1–2–5 of the Fourth Ward of the City of Providence.

The complaint and motion for temporary restraining order were filed in this Court on October 27, 1982. Because the general election to which this complaint pertains is scheduled to be held on November 2, 1982, the Court, without objection from the parties, consolidated the motion for a temporary restraining order with the prayer for preliminary injunction contained in the complaint. A hearing on the consolidated motions was held on October 28, 1982. The following decision and order is rendered *ora sponte* from the bench.[1]

At the hearing, the Court first certified, pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, the named plaintiff, Alice Brown, as the representative of a class comprising all registered black voters residing in that portion of Chad Brown located within Voting District 1–2–5 of the Fourth Ward of the City of Providence.[2] Initially, plaintiff presented no testimony in support of her case in chief, but instead rested on her verified complaint. The defendants offered no evidence in opposition to the complaint or otherwise pertinent to the matter. Domenic Carosi, a caucasian resident of Voting District 1–2–5 who lives closer to Storti's than to the Community Center at Chad Brown, moved to intervene as a party defendant; the Court granted this motion. Carosi testified on his own behalf and presented the testimony of Francis J. Dean, Jr., a member of the Board of Canvassers of the City of Providence and a named defendant. In rebuttal to the testimony of the defendant-intervenor, the plaintiff then presented the testimony of Clarence Featherson, the Director of the Community Center at Chad Brown.

The facts of this controversy are susceptible to easy summary. The 1982 elections are the first elections held under the municipal charter for the City of Providence (the "Charter").[3] The Charter expanded the number of wards within the City from thirteen to fifteen, thus necessitating wholesale changes in the boundary lines of each voting district and in the locations of polling places within those districts. The newness of the Charter, coupled with the prevalent uncertainty as to legislative elections in the State of Rhode Island,[4] placed upon the

1. Given the obvious need for expedited determination, the Court felt that it was provident to rule *ora sponte,* and reserved the right (exercised herein) to edit the Opinion prior to publication.

2. According to the plaintiff's verified complaint, over ninety percent of the residents of Chad Brown are black.

3. The Home Rule Charter of 1980 for the City of Providence was adopted on November 4,

1980, pursuant to the Rhode Island Constitution, Amendment 28 §§ 6, 7. Sections 204 and 1401 of the Charter provided for revision of City ward boundaries prior to the 1982 elections.

4. A lawsuit challenging the constitutionality of state senatorial districts is currently pending before a duly constituted Three Judge District Court For the District of Rhode Island. *Farnum v. Burns,* 548 F.Supp. 769 (D.R.I.1982). A temporary restraining order therein prohibiting

Board of Canvassers an onerous and unenviable burden.

For the primary elections held on September 14, 1982, the Board of Canvassers initially selected the Community Center at Chad Brown as the polling location for Voting District 1–2–5. That use went forward. On Tuesday, October 26, 1982, however, the Board of Canvassers announced that the polling place for Voting District 1–2–5 for the November 2 general election would be located at Storti's.

According to the testimony of Mr. Dean, the Board of Canvassers made the change after having gleaned the impression, prior to the primary elections, that the administration of the Community Center at Chad Brown had been somewhat less than enthusiastic about the placement of the voting machines at the Community Center. Mr. Featherson testified, however, that his only concern about the use of the Community Center as a polling place stemmed from the Board of Canvassers' failure to notify him prior to the delivery of the machines that the Center had been designated as the polling place for District 1–2–5. He had therefore been forced to reschedule many of the Center's activities on short notice. The Community Center had previously housed the administration of the Providence Housing Authority, and as an administrative office had been designated as a polling place in prior elections. The building had recently been converted into a Community Center for Chad Brown, however, and Mr. Featherson had become its director in March, 1982. Thus, he was unaware of the building's prior use as a polling place and was surprised by the arrival of the voting machines. Based on Mr. Featherson's testimony, the Board of Canvassers' rationale for relocating the polling place for Voting District 1–2–5 from Chad Brown to Storti's must fall of its own weight.

According to the uncontradicted allegations of the sworn complaint, the Urban League, other community organizations and concerned individuals conducted a special voter education and registration campaign within Chad Brown during the summer of 1982. This voter registration drive, combined with the use of the Community Center as a voting place, resulted in a significantly higher voter turnout from among the residents of Chad Brown for the primary elections held on September 14th than for earlier elections.

Plaintiff alleged that a change in the polling place from the Community Center to Storti's would make it considerably more difficult for the class members to vote. Many of the class members are elderly, and-or without automobiles. There was testimony that the public transportation from Chad Brown to Storti's stopped running at 6:30 p.m., one and one-half hours before the polls close. The Court concludes, after weighing all the evidence, that the location of the polling place for Voting District 1–2–5 at Storti's, rather than within Chad Brown, would be a substantial deterrent to voting by the members of the plaintiff class.

Finally, considerations of security, while certainly important, appear to be virtually nonexistent in this case. There was no evidence that the City would be unable to provide proper security for the safety of the voters if the polling place were relocated to Chad Brown. While there is certainly a risk of damage and vandalism to the voting equipment, that risk is not limited to Chad Brown, but would inhere in any location within the City.

Having heard the foregoing evidence and having found the facts to be as recited herein, the Court must now determine whether defendants violated the Voting Rights Act by changing the polling place from the Community Center at Chad Brown to Storti's. We are all familiar with the sacred nature of the right to vote: the franchise is fundamental to our American way of life. As the Supreme Court stated in *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct.

the conduct of senatorial elections is in effect. A somewhat similar suit questioning the constitutionality of state representative districts is presently before the Superior Court for the County of Providence.

1362, 12 L.Ed.2d 506 (1964), "[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Id.* at 555, 84 S.Ct. at 1378; *Griffin v. Burns,* 570 F.2d 1065, 1074–75 (1st Cir.1978), affirming decision of Judge Raymond J. Pettine, 431 F.Supp. 1361 (D.R.I.1977). Extraordinary efforts have been undertaken by various government agencies in this state and in this country to encourage greater minority participation in the affairs of government, especially in the exercise of the franchise.

By prohibiting any restrictions on the right to vote on account of race, the Fifteenth Amendment to the Constitution of the United States makes it clear that this important facet of American life extends to all Americans, regardless of color. The Voting Rights Act of 1965 added to the endeavor to ensure that all Americans had equal access to the polls. Section 1973 thereof specifically provides:

> No voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any state or political subdivision to deny or abridge the right of any citizen of the United States to vote on account of race or color.

42 U.S.C. § 1973.

The United States Supreme Court has made it clear beyond cavil that the location and accessibility of a polling place have a direct effect on a person's ability to exercise his franchise. *Perkins v. Matthews,* 400 U.S. 379, 387, 91 S.Ct. 431, 436, 27 L.Ed.2d 476 (1971). The Court specifically held that the use of polling places at locations remote from black communities, or at places calculated to intimidate blacks from entering (when alternatives were available), was a practice or procedure which violated Section 1973. *Id.* The Court stated:

> Even without going beyond the plain words of the statute, we think it clear that the location of polling places constitutes a 'standard, practice, or procedure with respect to voting.' The abstract right to vote means little unless the right

becomes a reality at the polling place on election day. The accessibility, prominence, facilities, and prior notice of the polling place's location all have an effect on a person's ability to exercise his [or her] franchise. Given [1973's] explicit concern with both the purpose and the effect of a voting 'standard, practice, or procedure,' the location of polling places comes within the section's coverage.

*Id.*

In 1978, then Chief Judge Raymond J. Pettine of this Court was faced with a case similar to the present one. In *Griffin v. Baronian,* C.A. No. 78–0476 (D.R.I. September 27, 1978), a group of black voters challenged the location of the polling place for their ward, the union hall of a union which had historically discriminated against blacks. Judge Pettine ordered the location changed. He stated that under the Voting Rights Act and *Perkins v. Matthews, supra,* the issue was simply "[w]hether or not the location of the polling place is an insult to the black community and may have the effect of inhibiting their voting." *Griffin v. Baronian, supra,* slip op. at 7. Judge Pettine held that proof of *actual* inhibition is irrelevant. *Id.* at 8. *Accord James v. Humphreys County Board of Election Commissioners,* 384 F.Supp. 114, 132 (N.D.Miss. 1974); *Moore v. LeFlore County Board of Election Commissioners,* 361 F.Supp. 609 (N.D.Miss.1973).

In light of these authorities and the evidence introduced, the Court finds that plaintiff has sustained her burden of establishing a probability of success on the merits of her allegation that the location of the polling place at Storti's may well abridge the class members' free exercise of the right to vote. It is unnecessary to consider whether plaintiff has failed to exhaust her administrative remedies, as the Voting Rights Act specifically provides that exhaustion is not required. 42 U.S.C. § 1971(d). *See Griffin v. Baronian, supra,* slip op. at 7. Neither is exhaustion required in civil rights actions brought pursuant to 42 U.S.C. § 1983, as is this case. *Patsy v. Board of Regents,* —— U.S. ——, 102 S.Ct.

2557, 73 L.Ed.2d 172 (1982). Moreover, pursuing administrative remedies at this late date would inevitably result in the election occurring before a decision could be obtained; that would be futile and self-defeating, and is a burden the plaintiff should not be expected to carry.

Counsel for the intervenor has attempted to argue questions pertaining to the convenience of other voters within the district. Given that the Board of Canvassers denominated Chad Brown as the voting place for the district for the primary election in September of 1982, the Court is not persuaded by intervenor's argument. More importantly, because of the history of racial discrimination in certain parts of the country, the Voting Rights Act makes specific provisions for members of certain minority groups who meet the criteria established in the Act. The rights conferred by that legislation upon the plaintiff class are distinctly different from the rights of the populace as a whole. 42 U.S.C. § 1973. *See Perkins v. Matthews,* 400 U.S. at 389, 91 S.Ct. at 437.

The Court does not question the good faith of the Board of Canvassers of the City of Providence. There is no evidence that the Board of Canvassers has acted out of bias or improper motivation; conversely, it has to carry out its functions as it sees fit. Had the miscommunication as to the delivery of the voting machines prior to the September 14 primary elections not occurred, this case would not, in all probability, be before this Court. Irrespective of the Court's conviction regarding the good faith of the Board of Canvassers of the City of Providence, however, the Court is constrained to find, based on the facts on the record and on the law, that the action of the Board of Canvassers in placing the polling place for this district at Storti's is constitutionally deficient and cannot be allowed to stand. *Reynolds v. Sims,* 377 U.S. at 544, 84 S.Ct. at 1372.

Counsel for the plaintiff are therefore directed to prepare an order to the following effect:

(i) The designation of Storti's, 242 Admiral Street, as a polling place for the Voting District 1–2–5 of Ward 4, unconstitutionally discourages participation in the electoral process by the members of the certified class.

(ii) Use of that polling place as the sole polling location for Voting District 1–2–5 in the November 2, 1982 general elections would effectuate a constructive disenfranchisement of members of the plaintiff class.

(iii) The defendant members of the Board of Canvassers are enjoined to transfer the polling place putatively established at 242 Admiral Street to the Community Center at Chad Brown with all due dispatch, so that the polling place at the Community Center at Chad Brown can be utilized fully for the election to be held on November 2, 1982.

(iv) Because the Court is concerned with the questions of notice to voters who may have read the warrant which was published in the *Providence Journal-Bulletin* on October 26, 1982, and which in light of this Court's ruling will now, as to Voting District 1–2–5, be inaccurate, the Court orders that the following prophylactic steps be taken:

a) from 7:00 a.m. to 9:00 p.m. on November 2, 1982, the City of Providence must station at 242 Admiral Street a uniformed police officer with instructions to direct voters who erroneously appear at that location to the Community Center at Chad Brown, the correct polling place for this voting district;

b) the Board of Canvassers, at the expense of the City, must publish, at the earliest practicable date, and in any event no later than Monday, November 1, 1982, a notice in the *Providence Journal-Bulletin* of reasonably adequate size and in reasonably prominent location, so as to apprise voters of this change in voting location. The entire warrant need not be republished, and the Court leaves to counsel for the parties to agree among themselves as to the size and wording of that notice. In the event counsel for the parties fail to agree, they are to appear before the Court forthwith for a determination of the issue.

The Court will not pass at this time on the prayer of the complaint which seeks attorney fees, but will not foreclose that issue from further consideration upon appropriate affirmative motion by the plaintiff. Without prejudging or foreclosing that issue, and having considered this matter only in the most perfunctory fashion, the Court must note that there is little in the record at this point which would impel the Court to exercise its discretion in favor of an award of attorney's fees against the City. The Court does not view the City or the Board of Canvassers as malefactors in this suit, and believes, as noted above, that they have acted in good faith. There has been a constitutional error made, however, and that error must be corrected. The City and the Board of Canvassers will be adequately punished, if punishment were necessary, by the expense necessarily attendant to the implementation of the Court's order. The Court sincerely regrets that expense, but where the constitutional rights of citizens are involved, municipal or state expense can be no barrier to the proper enforcement of those rights.

SO ORDERED.